OPINION
{¶ 1} Appellant, Allan Jackson, Jr., appeals from the November 3, 2006 judgment entry of the Trumbull County Court of Common Pleas, in which he was sentenced for five counts of rape and five counts of pandering obscenity involving a minor; and classified as a sexual predator. For the following reasons, we affirm.
 {¶ 2} Substantive and Procedural Facts *Page 2 
 {¶ 3} Appellant ("Mr. Jackson"), was indicted on January 18, 2006, for five counts of rape, in violation of R.C. 2907.02(A)(1)(b)(B), a first degree felony and five counts of pandering obscenity involving a minor, in violation of R.C. 2907.321(A)(1)(C), felonies of the second degree. Mr. Jackson pled not guilty at his arraignment on January 19, 2006, and his bond was set at $1,000,000 cash or surety.
 {¶ 4} Subsequently, Mr. Jackson filed a motion to suppress on April 4, 2006, alleging that the cell phones, which were in his possession when he was arrested and contained pornographic images of the minor child, "M.L.," were impermissibly searched prior to obtaining a search warrant. On the same day he also filed a motion to dismiss counts six through ten of the indictment. The court held a suppression hearing on April 13, 2006. The parties were given leave to file supplemental briefs, and on April 17, 2006, before the jury trial began, the court denied Mr. Jackson's motion to suppress finding that the contents of the cells phones would have eventually been discovered. The court also denied Mr. Jackson's motion to dismiss the five counts of pandering in sexually oriented material with a minor.
 {¶ 5} On April 13, 2006, Mr. Jackson filed a subpoena duces tecum for the Trumbull County Children Services Board ("TCCSB") in order to examine M.L.'s case file. TCCSB, in turn, filed a motion to quash the subpoena duces tecum on April 14, 2006. On April 17, 2006, as the jury trial was just beginning, Mr. Jackson filed a motion to show cause to compel TCCSB to comply. On April 17, 2006, the court denied the motion to quash and ordered the board to deliver the subpoenaed records to the court for an in camera inspection. The records arrived the next day, and the court reviewed the records in camera, finding that the file contained nothing of an exculpatory nature *Page 3 
with the exception of two items, and so advised both the state and defense counsel. The court then determined that those two items relating to an unsubstantiated allegation not made by M.L. that when she was two years old her five-year-old brother may have attempted to have oral sex or engage in some sort of sexual activity, were not relevant for purposes of this trial. On April 19, 2006, Mr. Jackson proffered this information on the record.
 {¶ 6} A jury trial was held on April 17, 18, and 19 of 2006. The state presented the testimony of five witnesses: Officer Sherrey McMahon, Detective Michael Krafcik, both of the Warren City Police Department; Rhonda Avery, R.N. for the TCCSB; "H.L"., the victim's mother; Dr. Jason Kovalcik ("Dr. Kovalcik") a physician from the Tri-County Children's Advocacy Center; Special Agent Mark Bodo of the Department of Homeland Security; Special Agent Lee Lerussi of the Ohio Bureau of Criminal Identification and Investigation; and M.L., the victim. The state also offered into evidence a video and photographs taken from Mr. Jackson's cell phones. Mr. Jackson testified in his defense.
 {¶ 7} The evidence reflects that on December 27, 2005, M.L., and her mother, H.L. went to the Warren City Police Department to report that M.L. was sexually assaulted by her sister's ex-boyfriend, Mr. Jackson, who was also considered a family friend. Specifically, Mr. Jackson forced M.L. to engage in acts of oral sex, which he would then photograph with his cell phones.
 {¶ 8} Officer Sherrey McMahon ("Officer McMahon") took the initial incident report and advised H.L. to take M.L. for a medical examination at Trumbull Memorial Hospital to investigate for possible evidence. H.L. relayed to Officer McMahon that on the night after Christmas, her sister, Misty, had alerted her to a weird feeling that she *Page 4 
had been having that something was going on between Mr. Jackson and M.L. H.L. questioned M.L., who grew very upset. After more questioning, M.L. told her that Mr. Jackson had sexually assaulted her by forcing her to perform oral sex on him. After ejaculating in her mouth, she would spit it out, and Mr. Jackson would toss her $5.00 and say, "Thanks for the hookup."
 {¶ 9} The victim was twelve years old and in seventh grade at the time. Mr. Jackson had been involved with Misty for the past sixteen years and resided in the same home as M.L. from time to time. Misty, H.L., and their children, all resided in the home, with their mother, the owner of the home. Mr. Jackson first assaulted M.L. when he was still residing with them. He would frequently watch the children and on one such occasion he blindfolded all the children and told them that he would stick something in their mouths and they would guess what it was. The first two children exclaimed that they tasted whip cream. However, M.L. said that whatever was stuck in her mouth was slimy and nasty and did not taste like whip cream. Mr. Jackson assaulted M.L. approximately four or five more times before he moved out, each time blindfolding her and forcing her to engage in acts of oral sex in which he would ejaculate in her mouth. Mr. Jackson moved out around July 5, 2005. When the occasion would arise on Mr. Jackson's visits with Misty, he would assault M.L. in the same fashion. The last of these incidents occurred in December of 2005. From the dated photographs taken from Mr. Jackson's cell phones, Mr. Jackson last assaulted M.L. on December 24, 25, and 26 of 2005. However on these occasions, he took incriminating photographs of M.L. with his penis in her mouth. He forced her to look up at the camera and told her to smile. On December 26, 2005, he dragged M.L. into the basement laundry room, took her *Page 5 
blindfold off, and told that he would hurt her the way he used to beat up her aunt if she told anyone. He made her smile at the camera, ejaculated into her mouth, and told her that he was going to throw her clothes away. She spit his semen onto the floor and Mr. Jackson threw her five dollars. M.L. estimated that Mr. Jackson has assaulted her at least twenty-five times.
 {¶ 10} Detective Michael Krafcik ("Detective Krafcik") was assigned to the case on December 28, 2005, the day after H.L. had discovered M.L. was being sexually assaulted and had made a report to the police. At approximately 10:30 a.m. Detective Krafcik, Elizabeth Lewis, a sexual assault investigator from TCCSB, and Sergeant Merrick went to the residence of the victim, where they met with M.L., H.L., and M.L.'s grandmother, who as the owner of the house granted them permission to enter and search.
 {¶ 11} The following day, December 29, 2005, Detective Krafcik sought and was issued a warrant for Mr. Jackson's arrest. Subsequently, on December 30, 2005, Mr. Jackson was arrested at the Pit-Stop Drive-Thru gas station at the intersection of Youngstown Road and Kenilworth in Warren.
 {¶ 12} Two cell phones were found on his person, both of which met M.L.'s and her family's description of the phones. M.L. had told the police Mr. Jackson took photographs of her with his two cell phones and that he always kept them with him. However, before obtaining a search warrant to search the contents of the phones, when Mr. Jackson was arrested, the police examined the phones and discovered the pictures of the minor with a penis in her mouth. The police then obtained a search warrant on January 4, 2006, to search the contents of the two cell phones further. *Page 6 
 {¶ 13} Special Agent Lee Lerussi testified that the six images were taken from Mr. Jackson's cell phones, one on December 24, 2005, two on December 25, 2005, two on December 26, 2005, and one undated and unknown.
 {¶ 14} Mr. Jackson testified in his own defense. He denied engaging in oral sex with M.L. Further, he denied taking any of the pictures with his cell phone. Mr. Jackson testified that on the dates of the last few incidents he did leave the cell phones unattended at the house when he left for brief periods of time. He then testified that he was present at the home when the pictures were taken, as evidenced by the time and date stamp on the photographs. The court overruled Mr. Jackson's renewed Crim.R. 29 motion for acquittal, finding that the state had submitted sufficient evidence on all the counts charged.
 {¶ 15} The jury returned a verdict of guilty on April 19, 2006, for all counts of the indictment, finding him guilty of five counts of rape and five counts of pandering obscenity involving a minor.
 {¶ 16} Mr. Jackson renewed his Crim.R. 29 motion for acquittal, filing it on April 27, 2006, which the court subsequently denied on June 1, 2006. Mr. Jackson then filed a motion for new trial on June 14, 2006, which the court denied in a judgment entry filed July 27, 2006. The court had already orally denied the motion at the sexual predator status conference that was held on July 6, 2006. Another sexual predator status conference was held between the parties and the court on September 7, 2006, at which time the court set Mr. Jackson's sexual predator hearing for October 13, 2006.
 {¶ 17} Before sentencing Mr. Jackson at a hearing on October 26, 2006, the court informed Mr. Jackson that the court found him to be a sexual predator. The court *Page 7 
then deferred the sentencing hearing until the following day, October 27, 2006, at which time Mr. Jackson was sentenced to five consecutive life sentences for each count of rape and five two year sentences for each of the five counts of pandering obscenity involving a minor. However, one of the two year sentences was ordered to be served consecutively to the life sentences, while the remaining four were to be served concurrent to the overall consecutive sentence. Mr. Jackson was then notified of his duties to register as a sexual predator and that he may be subject to post-release control after his release. Mr. Jackson filed a timely notice of appeal on December 1, 2006, appealing his judgment entry of sentence of November 3, 2006.
 {¶ 18} Mr. Jackson raises the following five assignments of error:
 {¶ 19} "[1.] The trial court erred in denying appellant's motion to suppress evidence obtained by the state.
 {¶ 20} "[2.] The trial court erred and abused its discretion by not granting appellant's motion for a new trial.
 {¶ 21} "[3.] The trial court erred and abused its discretion by not allowing a file from the Children Services Board into evidence.
 {¶ 22} "[4.] The trial court's adjudication of appellant as a sexual predator is against the manifest weight of the evidence.
 {¶ 23} "[5.] The appellant's convictions are against the manifest weight of the evidence."
 {¶ 24} Motion to Suppress
 {¶ 25} In his first assignment of error, Mr. Jackson contends that the trial court committed reversible error by denying his motion to suppress the photographs of the *Page 8 
victim that were found in his cell phones. Specifically, Mr. Jackson argues that the contents of the cell phones were illegally seized without a proper search warrant, and thus they should have been suppressed.
 {¶ 26} "At a hearing on a motion to suppress, the trial court functions as the trier of fact, and, therefore, is in the best position to weigh the evidence by resolving factual questions and evaluating the credibility of any witnesses." State v. McGary, 11th Dist. No. 2006-T-0127, 2007-Ohio-4766, ¶ 20, citing State v. Molek, 11th Dist. No. 2001-P-0147, 2002-Ohio-7159, ¶ 24, citing State v. Mills (1992),62 Ohio St.3d 357, 366; see, also, State v. Mustafa (Dec. 14, 2001), 11th Dist. No. 2000-P-0116, 2001 Ohio App. LEXIS 5661, 3-4. Thus, "[a]n appellate court must accept the findings of fact of the trial court as long as those findings are supported by competent, credible evidence." Id. citing State v. Retherford (1994), 93 Ohio App.3d 586, 592; City ofRavenna v. Nethken, 11th Dist. No. 2001-P0040, 2002-Ohio-3129, ¶ 13. "After accepting such factual findings as true, the reviewing court must then independently determine, as a matter of law, whether or not the applicable legal standard has been met." Id.
 {¶ 27} "The exclusionary rule operates to exclude evidence obtained by the government in violation of the United States Constitution."State v. Helton, 160 Ohio App. 3d 291, 2005-Ohio-1789, ¶ 14, citingState v. Harden (May 26, 2000), 11th Dist. No. 98-L-234, 2000 Ohio App. LEXIS 2274, 11. "The purpose of this rule is to deter police misconduct. Id. Of course, there are the competing concerns that the guilty are punished and the criminal justice process is not subverted through the exclusion of trustworthy, relevant evidence." Id., citingHayden at 11-12. *Page 9 
 {¶ 28} "The rule bars not only the admission of evidence obtained as a direct result of a constitutional violation, * * * but also evidence obtained as an indirect result of the constitutional violation." Id. at ¶ 15, citing Hayden at 12. "The latter type of evidence is commonly referred to as the `fruit of the poisonous tree.'" Id.
 {¶ 29} "The United States Supreme Court has created three exceptions to the exclusionary rule for evidence obtained as an indirect result of a constitutional violation." Id. at ¶ 16, citing Hayden at 12. "These are (1) the independent source doctrine, (2) the inevitable discovery doctrine, and (3) the attenuation doctrine." Id.
 {¶ 30} In this case, the trial court determined that although the officer impermissibly examined the contents of the cell phones upon Mr. Jackson's arrest effected pursuant to a proper search warrant on December 30, 2006; the contents of the cell phones would have been inevitably discovered, since a proper search warrant was later issued on January 4, 2006. Thus, the exclusionary rule did not apply to the officer's illegal search after the phones were properly seized since the contents of the phones were admissible under the inevitable discovery doctrine and the subsequent, lawful search.
 {¶ 31} "The ultimate or inevitable discovery exception to the Exclusionary Rule is hereby adopted so that illegally obtained evidence is properly admitted in a trial court proceeding once it is established that the evidence would have been ultimately or inevitably discovered during the course of a lawful investigation." Id. at ¶ 17, citingState v. Perkins (1985), 18 Ohio St.3d 193, at syllabus. "This doctrine applies if the prosecution proves by a preponderance of the evidence that the police would have ultimately discovered the illegally obtained evidence apart from the unconstitutional *Page 10 
conduct." Id., citing State v. Fernandez, 11th Dist. No. 2001-L-162, 2002-Ohio-7140, ¶ 34, citing State v. Seals (Dec. 30, 1999), 11th Dist. No. 98-L-206, 1999 Ohio App. LEXIS 6398.
 {¶ 32} We agree with the trial court that under the circumstances presented by the facts of this case the contents of the cell phones would have been inevitably discovered as the police proceeded with their investigation. This is not a case where the police made an illegal seizure, but rather, the cell phones were seized incident to a lawful arrest. They were identified prior to Mr. Jackson's arrest as containing evidence of the alleged crimes by the victim and her family, and they were identified by the victim and her family as always being on Mr. Jackson's person. Indeed, Detective Krafcik testified that the officers wanted to arrest Mr. Jackson while he was carrying the phones on his person. However, once the cell phones were lawfully in police custody, there was some debate as to whether the officers could proceed to examine the contents of the phones.
 {¶ 33} The officers then consulted with the city prosecutor's office while the phones were in custody prior to the illegal search as to whether they could view the contents of the phone without a search warrant. The officers were advised that they could "go ahead at least turn on, look at them and proceed from that point." Upon determining that the cell phones did contain the evidence they sought, the officers obtained a proper search warrant from the court on January 4, 2006, to further examine and extract the contents of the phone. This is not a case where the police illegally searched and seized an item, but rather, the phones were already in lawful custody and *Page 11 
a search warrant was pending. Most importantly, the officers had grounds for the issuance of a warrant to search the phones and had taken steps to procure a warrant.
 {¶ 34} "Pursuant to a search incident to arrest, the police may conduct a full search of the arrestee's person, and that search is not limited to the discovery of weapons, but may include evidence of a crime as well." State v. Eckliffe, 11th Dist. No. 2001-L-105, 2002-Ohio-7136, ¶ 17, citing State v. Jones (1996), 112 Ohio App.3d 206, 215, citingU.S. v. Robinson (1973), 414 U.S. 218.
 {¶ 35} While we do not condone the officer's premature search of the contents of the cell phones in this case, it has been "established that the evidence would have been inevitably discovered during the course of a lawful investigation." Id., citing State v. Taylor (2000),138 Ohio App.3d 139, 150, citing State v. Perkins (1985), 18 Ohio St.3d 193, 196. Here, the contents of the cell phones would have been discovered after the officers had obtained a proper search warrant, which indeed they did obtain on January 4, 2006.
 {¶ 36} Mr. Jackson's first assignment of error is without merit.
 {¶ 37} Motion for New Trial
 {¶ 38} In his second assignment of error, Mr. Jackson contends that the trial court erred in denying his motion for new trial. Specifically, Mr. Jackson argues that the trial court abused its discretion in denying a new trial premised upon discovered evidence of a photograph of a couch. For the following reasons, we find this contention to be without merit.
 {¶ 39} "A motion for a new trial, made pursuant to Crim.R. 33, is addressed to the sound discretion of the trial court." State v.Valentine, III, 11th Dist. No. 2002-P-0052, *Page 12 
2003-Ohio-2838, ¶ 14, citing State v. Schiebel (1990), 55 Ohio St.3d 71, paragraph ten of the syllabus. "A trial court's ruling on a Crim.R. 33(B) motion will not be disturbed absent an abuse of that discretion." Id. Further, "[t]he discretionary decision to grant a motion for a new trial is an extraordinary measure which should be used only when the evidence presented weighs heavily in favor of the moving party." Id., citing State v. Otten (1986), 33 Ohio App.3d 339.
 {¶ 40} "In order to obtain a new trial based upon newly discovered evidence, a defendant must show that `the new evidence: (1) discloses a strong possibility that it will change the result if a new trial is granted; (2) was discovered after the trial; (3) is such as could not in the exercise of due diligence have been discovered before the trial; (4) is material to the issues; (5) is not merely cumulative to the former evidence; and (6) does not merely impeach or contradict the former evidence.'" Id. at ¶ 11, citing State v. Petro (1947), 148 Ohio St. 505, syllabus.
 {¶ 41} We find no abuse of discretion in the trial court's denial of Mr. Jackson's motion for new trial based on newly discovered evidence. Mr. Jackson argues that a picture, found by his mother after trial when she was going through his belongings is evidence that could be used to impeach M.L.'s testimony. The picture is of two women, one woman is sitting and looking to her right, while the other woman is feeding a baby. Mr. Jackson contends this picture contradicts M.L.'s testimony that the incidents occurred in the basement since the pictures taken on his phone may have had this couch in the background.
 {¶ 42} Mr. Jackson has failed to evidence that this photograph warrants the extraordinary measure of a new trial. Not only does this picture fail every prong of the *Page 13 Petro test since it is not evidence of substance that would change the outcome of trial, we also note that there has been no showing that in the exercise of due diligence this photograph could not have been discovered prior to trial. Further, the picture is not material to the issues, and most fundamentally, the photograph attempts to merely impeach the former evidence, that of the testimony of M.L.
 {¶ 43} Moreover, although M.L. testified that several of the incidents occurred in the basement, she also testified that they occurred in other areas of the house, such as her brother's old room. Thus, there is nothing that this photograph depicts that would warrant a new trial.
 {¶ 44} We conclude that the trial court's denial of Mr. Jackson's motion for a new trial based on newly discovered evidence was proper.
 {¶ 45} Mr. Jackson's second assignment of error is without merit.
 {¶ 46} Evidentiary Discretion
 {¶ 47} In his third assignment of error, Mr. Jackson contends that the trial court abused its discretion by refusing to admit into evidence a file from the TCCSB into evidence. Specifically, Mr. Jackson contends that this file supports the contention that someone other than himself committed these crimes. We disagree and find this contention to be without merit.
 {¶ 48} "The determination to admit or exclude evidence is within the sound discretion of the trial court and will not be reversed by an appellate court absent a showing of an abuse of discretion." State v.Vinson, Jr., 11th Dist. No. 2006-L-238, 2007-Ohio-5199, ¶ 48, citingState v. Sledge, 11th Dist. No. 2001-T-0123, 2003-Ohio-4100, ¶ 20, citing State v. Rootes (Mar. 23, 2001), 11th Dist. No. 2000-P-0003, *Page 14 
2001 Ohio App. LEXIS 1391, 4-5, citing Renfro v. Black (1990),52 Ohio St. 3d 27, 32. "Abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable." Id. citing Sledge at 4-5, citingState v. Montgomery (1991), 61 Ohio St.3d 410, 413, quoting State v.Adams (1980), 62 Ohio St.2d 151, 157.
 {¶ 49} Mr. Jackson argues that the TCCSB's file on M.L. concerning an unrelated matter, which allegedly occurred ten years earlier, was a vital part of his defense. Thus, he argues that the trial court's refusal to admit the contents of the file into evidence is a clear abuse of discretion. This contention is without merit as a review of the file reveals that it is irrelevant to the case at hand. Specifically, the file contained an allegation that was not made by the victim and that was completely unsubstantiated. The allegation concerned M.L.'s five-year-old brother who supposedly attempted to engage in oral sex with M.L., who was two years old at the time. The allegations were unsubstantiated and the case was closed. Thus, the trial court properly excluded this evidence.
 {¶ 50} Mr. Jackson argues that the unsubstantiated allegations in this file that were not made by the victim were crucial to his defense in proving that he was not the actual perpetrator. Not only does this file have no relevance to the instant case, but in addition, we note that Mr. Jackson failed to present such a defense in any case; and that even if he did, this file still would not be relevant as it is unknown who made those allegations.
 {¶ 51} Mr. Jackson's third assignment of error is without merit.
 {¶ 52} Sexual Predator Classification *Page 15 
 {¶ 53} In his fourth assignment of error, Mr. Jackson contends that the trial court's determination that he is a sexual predator is against the manifest weight of the evidence. Specifically, Mr. Jackson argues that the trial court failed to consider all of the factors specified in R.C. 2950.09(B)(3) and that because he scored a four out of a possible twelve on the Static-99 actuarial risk assessment test, the evidence does not support such a finding that he is likely to reoffend. We find this contention to be without merit.
 {¶ 54} "We apply the civil manifest-weight-of-the-evidence standard of review in evaluating a trial court's sexual predator determination."State v. Reeves, 11th Dist. No. 2006-T-0099, 2007-Ohio-4765, ¶ 13. "Because sex-offender-classification proceedings under R.C. Chapter 2950 are civil in nature, a trial court's determination in a sex-offender-classification hearing must be reviewed under a civil manifest-weight-of-the-evidence standard and may not be disturbed when the judge's findings are supported by some competent, credible evidence." Id., citing State v. Wilson, 113 Ohio St.3d 382,2007-Ohio-2202, at syllabus. "Under this standard, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." Id., citing CE. Morris Co. v.Foley Constr. Co. (1978), 54 Ohio St.2d 279, at syllabus.
 {¶ 55} Further, "[w]hen reviewing a judgment under a manifest-weight-of-the-evidence standard, a court has an obligation to presume that the findings of the trier of fact are correct." Id. at ¶ 14, citing Seasons Coal Co., Inc. v. Cleveland (1984),10 Ohio St.3d 77, 79-81. "This presumption arises because the trial judge had an opportunity to *Page 16 
view the witnesses and observe their demeanor in weighing the credibility of the witnesses." Id., citing Seasons Coal at 80.
 {¶ 56} "In contrast, the Supreme Court discussed the criminal manifest-weight-of-the-evidence standard of review in State v.Thompkins (1997), 78 Ohio St.3d 380. "The Court in that case distinguished between the sufficiency of the evidence and the manifest weight of the evidence, holding that sufficiency of the evidence is a test of adequacy of the evidence as to whether the evidence is legally sufficient to support a verdict as a matter of law, while weight of the evidence addresses whether the state's or the defendant's evidence is more persuasive." Id. at ¶ 15, citing Thompkins at 386-387.
 {¶ 57} "Under either the civil or criminal standard, the fact-finder is afforded great deference, but the civil standard tends to merge the concepts of weight and sufficiency. Thus, a judgment supported by some competent, credible evidence going to all the essential elements of the case must be affirmed." Id. at ¶ 16, citing Wilson at ¶ 26.
 {¶ 58} "In contrast, under Thompkins, although there may be sufficient evidence to support a conviction, a reviewing court can still reweigh the evidence and reverse a trial court's holding. Thus, the civil manifest weight of the evidence standard affords the lower court more deference than the criminal standard." Id. at ¶ 17, citingWilson at ¶ 26.
 {¶ 59} Pursuant to R.C. 2950.01(E), a "sexual predator" is defined as:
 {¶ 60} "(1) The person has been convicted of or pleaded guilty to committing a sexually oriented offense * * * and is likely to engage in the future in one or more sexually oriented offenses. * * *" *Page 17 
 {¶ 61} "A trial court can only classify an individual as a sexual predator when it finds the state has established both prongs by clear and convincing evidence." Reeves at ¶ 21, citing State v. Wade (Dec. 29, 2000), 11th Dist. No. 99-T-0061, 2000 Ohio App. LEXIS 6218, 5. "Under this evidential standard, the state carries its burden of proof where the evidence creates in the mind of the trier of fact a firm belief as to the facts sought to be established." Id., citing State v.Anderson, 11th Dist. No. 2000-G-2316, 2001-Ohio-7069, 8. "It is more than a preponderance of the evidence and less than beyond a reasonable doubt." Id., citing State v. Yodice, 11th Dist. No. 2001-L-155, 2002-Ohio-7344, ¶ 13.
 {¶ 62} "The trial court is required to consider the factors under R.C.2950.09(B)(3)(a) through (j) in determining whether a defendant is likely to commit another sexually oriented offense in the future." Id. at ¶ 22, citing State v. Reed, 10th Dist. No. 02AP-694, 2003-Ohio-2412, ¶ 52.
 {¶ 63} The trial court correctly determined that Mr. Jackson satisfied the first prong of the "sexual predator" definition since he was found guilty of five counts of rape, an aggravated felony of the first degree. R.C. 2905.01(D)(1). The trial court then reviewed the specific factors set forth in R.C. 2950.09(B)(3) that must be considered by the court prior to making a determination that a defendant is a sexual predator.
 {¶ 64} Pursuant to R.C. 2950.09(B)(3):
 {¶ 65} "* * * the judge shall consider all relevant factors, including, but not limited to, all of the following:
 {¶ 66} "(a) The offender's * * * age *Page 18 
 {¶ 67} "(b) The offender's * * * prior criminal record regarding all offenses, including, but not limited to, all sexual offenses;
 {¶ 68} "(c) The age of the victim of the sexually oriented offense for which sentence is to be imposed * * *;
 {¶ 69} "(d) Whether the sexually oriented offense for which sentence is to be imposed * * * involved multiple victims;
 {¶ 70} "(e) Whether the offender * * * used drugs or alcohol to impair the victim of the sexually oriented offense or to prevent the victim from resisting;
 {¶ 71} "(f) If the offender * * * previously has been convicted of or pleaded guilty to * * * a criminal offense, whether the offender * * * completed any sentence * * * imposed for the prior offense * * * and, if the prior offense * * * was a sex offense of a sexually oriented offense, whether the offender * * * participated in available programs for sexual offenders;
 {¶ 72} "(g) Any mental illness or mental disability of the offender * * *;
 {¶ 73} "(h) The nature of the offender's * * * sexual conduct, sexual contact, or interaction in a sexual context with the victim of the sexually oriented offense and whether the sexual conduct, sexual contact, or interaction in a sexual context was part of a demonstrated pattern of abuse;
 {¶ 74} "(i) Whether the offender * * * during the commission of the sexually oriented offense for which sentence is to be imposed * * *, displayed cruelty or made one or more threats of cruelty;
 {¶ 75} "(j) Any additional behavioral characteristics that contribute to the offender's * * * conduct." *Page 19 
 {¶ 76} Further, "[i]t is not necessary for a trial court to find all of said factors apply to an offender, or even a majority of the factors prior to the classification as a sexual predator." Reeves at ¶ 35, citing State v. Swank (Dec. 21, 2001), 11th Dist. No. 98-L-049, 2001 Ohio App. LEXIS 5846, 16; see, also, Yodice at ¶ 13.
 {¶ 77} In this case, the trial court determined that Mr. Jackson met the definition of a sexual predator as defined in R.C. 2950.01(E) after holding a hearing in which Dr. Rindbergh testified as to the sexual predator evaluation he conducted of Mr. Jackson and reviewed all of the factors outlined in R.C. 2905.09(B)(3). Specifically, Dr. Rindbergh testified that Mr. Jackson scored a four on the Static-99 test which indicated that Mr. Jackson has a 26% potential of reoffending within the next five years, and a 36% chance of reoffending in the next fifteen years. Further, a score of four on the Static-99 is considered a "moderate to high risk" for reoffending. Dr. Rindbergh further opined that Mr. Jackson's profile is similar to individuals who are immature, self indulgent, have an inflated self-esteem, in addition to suffering from slight paranoia. Further, he opined that Mr. Jackson has a potential for drug abuse and has used drugs in the past, accepts little responsibility for his behavior, and that he has several antisocial traits. In addition, Mr. Jackson has a criminal history and was convicted for domestic violence among other convictions in 2004.
 {¶ 78} Mr. Jackson first contends that the trial court did not review all of the factors listed in R.C. 2950.09(B)(3). However, this contention is without merit as the state introduced evidence on each factor of R.C. 2950.09(B)(3). Moreover, "[a] trial court is not required to find a specific number of factors under R.C. 2950.09(B)(3) before it can adjudicate an offender a sexual predator so long as its determination is *Page 20 
grounded upon clear and convincing evidence." State v. Darroch,Jr., 11th Dist. No 2005-L-012, 2006-Ohio-3211, ¶ 11, citing State v.Fairbanks, 11th Dist No. 2001-L-062, 2003-Ohio-700, at ¶ 14. "Furthermore, the court need not elaborate on its reasons for finding certain factors as long as the record includes the particular evidence upon which the trial court relied in making its adjudication." Id., citing State v. Eppinger (2001), 91 Ohio St.3d 158, 166.
 {¶ 79} Mr. Jackson also contends that because he only scored a moderate to high risk of reoffending, his score of a four on the Static-99 negates a determination that he is a sexual predator. However, "* * * the Static-99 and other risk assessment tools are not dispositive. `It is within the discretion of the trial court to assess the significance of the psychological evaluation's findings, including its weight and credibility, and then consider the totality of the circumstances presented in the case.'" State v. Oliver, II, 11th Dist. No. 2006-T-0075, 2007-Ohio-339, ¶ 21, citing State v. Schaub, 11th Dist. No. 2003-L-091, 2005-Ohio-703, ¶ 35, reversed on other grounds; In reOhio Criminal Sentencing Statutes Cases, 109 Ohio St.3d 313,2006-Ohio-2109, ¶ 30. "Stated otherwise, `whether an offender is likely to re-offend sexually' is not bound by or couched in terms of recidivism test results and consideration of relevant circumstances and evidence on a case-by-case basis." Id., citing State v. Robertson,147 Ohio App.3d 94, 102, 2002-Ohio-494.
 {¶ 80} Indeed, we have affirmed sexual predator adjudications for offenders who scored the lowest possible score and slightly above on the Static-99 in previous cases. In Darroch, we affirmed a sexual predator adjudication where the defendant scored the lowest possible score, a zero, on the Static-99. In State v. Richter, 11th Dist. No. 2002- *Page 21 
L-080, 2003-Ohio-6734, we affirmed a sexual predator adjudication where the defendant scored only a two. In Reeves, we affirmed a sexual predator adjudication where the defendant scored a one.
 {¶ 81} In this case, numerous findings support the trial court's sexual predator adjudication: the victim was twelve years old, she testified that Mr. Jackson sexually assaulted her on numerous occasions, and the very nature of the sexual assaults were extremely deviant. Further, Mr. Jackson would photograph the victim while engaging in these heinous acts. He also has a lengthy criminal history, as well as a history of domestic violence.
 {¶ 82} The trial court considered the evidence and relevant factors in R.C. 2950.09 and its determination is supported by the evidence. Thus, we cannot say the trial court lost its way or created a manifest miscarriage of justice in making its determination that appellant was a sexual predator. Indeed, the weight of the evidence supports the trial court's determination that Mr. Jackson is a sexual predator.
 {¶ 83} Mr. Jackson's fourth assignment of error is without merit.
 {¶ 84} Manifest Weight of the Evidence
 {¶ 85} In his fifth assignment of error, Mr. Jackson contends that his convictions are against the manifest weight of the evidence. Specifically, Mr. Jackson contends that the testimony during trial was inconsistent and thus, the verdict is not supported by the evidence. We find these contentions to be without merit.
 {¶ 86} "Unlike sufficiency of the evidence, manifest weight of the evidence raises a factual issue. The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines *Page 22 
whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" State v.McKinney, Jr., 11th Dist. No. 2006-L-169, 2007-Ohio-3389, ¶ 46, citingState v. Higgins, 11th Dist. No. 2005-L-215, 2006-Ohio-5372, ¶ 35, citing Thompkins at 387.
 {¶ 87} "Further, `[t]he discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.'" Id. at ¶ 47, citing State v.Fritts, 11th Dist. No. 2003-L-026, 2004-Ohio-3690, ¶ 23, citingState v. Martin (1983), 20 Ohio App.3d 172, 175. "This is so since `[t]he role of the appellate court is to engage in a limited weighing of the evidence introduced at trial in order to determine whether the state appropriately carried its burden of persuasion.'" Id. citingThompkins at 390 (Cook, J. concurring.) "The reviewing court must defer to the actual findings of the trier of fact as to the weight to be given the evidence and the credibility of the witnesses." Id., citingThompkins at 390, citing State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
 {¶ 88} Mr. Jackson argues that the testimony introduced at trial is inconsistent because there was testimony that the clothes M.L. was wearing on the date of the last incident were thrown away. Mr. Jackson argues that this testimony is inconsistent because he has a picture of M.L. wearing that clothing on the date of the incident. Mr. Jackson fails to show us how this is inconsistent with the testimony that the clothes were later thrown away. We would assume that M.L. would be wearing the clothes that were later thrown away on the day of the incident. *Page 23 
 {¶ 89} Mr. Jackson next argues that the testimony is inconsistent with the verdict because M.L. testified that she spit his semen on the laundry room floor although no DNA was later found upon a police search of the area. However, there was testimony that the laundry room was in complete disarray with loads of dirty laundry strewn all over the floor due to a broken laundry machine. In addition, due to the nature of the sexual crime, Dr. Jason Kovalcik testified that he would not expect to find any physical evidence of oral sex. Moreover, M.L. testified that Mr. Jackson had told her after the last incident occurred on December 26, 2005, that he was going to throw away her clothes. She also testified that she had no idea if he did indeed do so.
 {¶ 90} Next, Mr. Jackson argues that because he did not have continuous custody of his cell phones on the night of the incident this evidences that he was not the one who took pictures of the victim with a penis in her mouth with his cell phones. While Mr. Jackson testified at trial that he did not have continuous custody of the phones at all times of the night, none of his absences occurred when the pictures were taken. According to the time-stamps on all but one of the pictures, which did not contain a date, and Mr. Jackson's own testimony, he was present in the house when the pictures were taken. Thus, this argument is simply without merit.
 {¶ 91} Finally, Mr. Jackson argues that a photograph of his penis that he entered into evidence is dispositive of his innocence since it depicts a distinct birthmark that he has had all of his life. He argues that this mark is not seen on the cell phone photographs and there was no evidence to show that the pictures on the phone showed such a mark. A comparison of these photographs reveals that this argument is also without merit. The cell phone pictures are not as clear as the photograph Mr. Jackson *Page 24 
admitted into evidence and one would not be able to distinguish a mark if one was present. Further, all of these pictures were submitted to the jury.
 {¶ 92} A review of the evidence in this case reveals that the manifest weight of the evidence weighs heavily in a finding of guilt. The testimony and evidence that the state presented at trial cannot lead us to conclude that the jury lost its way or created a manifest miscarriage of justice. Rather, the evidence reveals that Mr. Jackson forced a young girl to engage in acts of oral sex, and further demeaned her by photographing her while the act was occurring. The state introduced the testimony of the victim and photographs that were taken from Mr. Jackson's personal cell phones. Although Mr. Jackson testified in his own defense and argued that he did not take the pictures, he introduced no evidence to support his assertions. He denied the charges against him and that he took the pictures that were taken with his phones. Although he testified that he left the house on December 24, 2005 and December 26, 2006, and that his cell phones were unattended, his own testimony clearly established that he returned or was present at the home when all of the pictures were taken.
 {¶ 93} As to the credibility of M.L. and Mr. Jackson as witnesses, "[i]t is well-settled that when assessing the credibility of witnesses, `[t]he choice between credible witnesses and their conflicting testimony rests solely with the finder of fact and an appellate court may not substitute its own judgment for that of the finder of fact.'" Id. at ¶ 49, citing State v. Grayson, 11th Dist. No. 2006-L-153, 2007-Ohio-1772, ¶ 31, citing State v. Awan (1986), 22 Ohio St.3d 120,123. "Indeed, the factfinder is free to believe all, part, or none of the testimony of each witness appearing before it." Id., citing *Page 25 Grayson, citing Warren v. Simpson (Mar. 17, 2000), 11th Dist. No. 98-T-0183, 2000 Ohio App. LEXIS 1073, 8.
 {¶ 94} Thus, the evidence in this case overwhelmingly supports a finding of guilt.
 {¶ 95} Mr. Jackson's fifth assignment of error is without merit.
 {¶ 96} The judgment of the Trumbull County Court of Common Pleas is affirmed.
 CYNTHIA WESCOTT RICE, P.J., TIMOTHY P. CANNON, J., concur. *Page 1