NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0321n.06

No. 10-6470

FILED

*Mar 23, 2012*

LEONARD GREEN, Clerk

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,                    )
                                             )
        Plaintiff-Appellee,                  )
                                             )    ON APPEAL FROM THE UNITED
v.                                           )    STATES DISTRICT COURT FOR THE
                                             )    WESTERN DISTRICT OF KENTUCKY
JONATHAN WITHERSPOON,                        )
                                             )
        Defendant-Appellant.                 )

Before:  SUHRHEINRICH, SUTTON, and COOK, Circuit Judges.

COOK, Circuit Judge.  Defendant Jonathan Witherspoon pleaded guilty to manufacturing 100 or more marijuana plants, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(vii).  His guilty plea reserved the right to appeal from the district court's denial of his motion to suppress.  He now exercises that right, and we affirm.

I.

From a police helicopter flying over a rural area in Clinton County, Kentucky, a police "spotter" identified marijuana plants growing a few hundred yards behind Witherspoon's home in a neighboring cornfield.  The spotter alerted a team of police officers on the ground to the marijuana and directed the officers to the driveway of the house nearest the cornfield.  The house—which stood

remote from other homes in the area—belonged to Witherspoon, who rented the house but did not own or maintain the adjacent cornfield.

Witherspoon's property consisted of a one-acre plot of land situated between the main road and a large cornfield. Three buildings sit on the property arranged as follows: Facing the property from the front, a house surrounded by a mowed lawn stands on the left side of the property. From the right side of the house, a gravel driveway leads back to a metal-sided outbuilding. The metal outbuilding abuts a wooden shed and forms an "L," the interior angle of which faces the cornfield behind the property. Behind the metal building, a weedy and overgrown area interspersed with patches of bare dirt extends to the edge of the cornfield.

After the officers parked near Witherspoon's property, the spotter led them to several large marijuana plants a few hundred yards into the cornfield. Once the officers destroyed the plants, the spotter shepherded them back to their vehicles via a route near the edge of the cornfield behind Witherspoon's property. As they approached this edge of the cornfield, the officers discovered a six-foot-tall marijuana plant sitting in a tub between the first few rows of corn. The discovery prompted one officer to search the nearby edge of the cornfield, where he found several plastic trays containing around 150 marijuana seedlings. These plants sat approximately 60 yards "directly behind" Witherspoon's house, in the first few rows of corn at the edge of the property.

The seedlings suggested cultivation, and nearby footprints identified a possible cultivator. A recent rain left the ground muddy, and officer James McArthur noticed fresh-looking tracks near

the marijuana plants. The tracks marked a path between the marijuana seedlings and the entrance

to the metal outbuilding on Witherspoon's property. Believing that someone walking from the

outbuildings to tend to the seedlings created the tracks, McArthur followed them from the cornfield

into the clearing behind the outbuilding. Once in the clearing, McArthur noticed another tub

containing several large marijuana plants nestled within the corner of the "L" formed by the two

outbuildings. Though he recognized these plants after following the footprints into the clearing,

McArthur testified that the plants were visible from the edge of the cornfield. McArthur followed

the footprints to their terminus, the entrance of the metal outbuilding. Professedly out of concern

for officer safety, McArthur entered the building, where he found an additional tray of marijuana

seedlings.

Only after his initial search of Witherspoon's outbuilding and surrounding area did McArthur

seek a warrant to search Witherspoon's property. His affidavit in support of the search warrant

stated the following:

> Four marijuana plants where [sic] spotted in a cornfield approximately two hundred
> yards behind residence by Kentucky State Police Spotter G. Wilson. The Marijuana
> Strike Force located the plants in the cornfield and eradicated the plants. While in
> route [sic] back to the vehicles a large marijuana plant was located in between the
> weeds behind residence and corn.
>
> . . .
>
> While looking around edge of cornfield approximately 149 plants were located
> between the corn and weeds in plastic containers. There also what [sic] appeared to
> be fresh footprints in the mud from the outbuilding to the cornfield. Following the

> foot prints a plastic potting tub was visible with approximately five marijuana plants beside the outbuilding and an air compressor.

A state judge, satisfied that probable cause existed, issued the search warrant. Armed with the warrant, police officers searched Witherspoon's property and seized marijuana, marijuana seeds, and other items associated with marijuana manufacturing, along with several firearms.

A grand jury charged Witherspoon with manufacturing 100 or more marijuana plants, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(vii). At his arraignment, Witherspoon pleaded not guilty and moved to suppress the evidence obtained from the search of his property, including marijuana seized from his house, his outbuildings, and from the cornfields behind his property. Witherspoon argued that McArthur included knowingly false statements in the affidavit supporting the search warrant, that the affidavit failed to establish probable cause to search Witherspoon's property, and that the affidavit contained information discovered through a warrantless search of Witherspoon's property.

The district court denied Witherspoon's motion to suppress, finding (1) that the search warrant affidavit contained only lawfully obtained information and (2) that the officers inevitably would have discovered the evidence Witherspoon sought to suppress absent the allegedly unlawful search. After the court denied his motion for reconsideration raising the same arguments, Witherspoon conditionally pleaded guilty, preserving the right to appeal the denial of his suppression motion.

II.

On appeal, Witherspoon again argues that the affidavit contains information obtained during an unlawful search of his curtilage, and that without this ill-gotten evidence the affidavit fails to demonstrate a sufficient nexus between the marijuana in the cornfield and Witherspoon's property. Further, he challenges the district court's conclusion that the inevitable-discovery doctrine bars his claim. Last, he argues that McArthur knowingly included material false statements and omitted material facts from the affidavit.

*A. Standard of Review*

We review the district court's factual findings for clear error and its conclusions of law de novo. *See United States v. Dillard*, 438 F.3d 675, 680 (6th Cir. 2006). We find clear error only if, after reviewing the record in the light most likely to support the district court's decision, we are left with a "definite and firm conviction that a mistake has been committed." *Id.* (quoting *United States v. Navarro-Camacho*, 186 F.3d 701, 705 (6th Cir. 1999).

*B. Analysis*

Witherspoon wisely refrains from challenging the district court's conclusion that the search warrant affidavit demonstrated probable cause to search his property. Probable cause exists when common sense suggests a "fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). An affidavit demonstrating such a

probability must establish "a nexus between the place to be searched and the evidence sought." *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004) (en banc) (quoting *United States v. Van Shutters*, 163 F.3d 331, 336-37 (6th Cir. 1998)).

McArthur's affidavit in support of the search warrant described overwhelming evidence of the illegal cultivation of marijuana, all of which pointed directly at Witherspoon's property. First, a "large marijuana plant" grew between the weeds behind Witherspoon's property and the cornfields. Another 149 marijuana seedlings in plastic containers skirted Witherspoon's property, resting between the weeds and corn that marked the end of Witherspoon's property and the beginning of the cornfield. Footprints in the mud connected the marijuana plants in the cornfield to Witherspoon's property; the tracks evidenced a commute between the plants and the entrance of an outbuilding behind Witherspoon's house. Last, approximately five marijuana plants sat in a plastic potting tub beside the outbuilding. Based on these facts—particularly the "significant" number of plants at the edge of the cornfield, the fresh footprints, and the marijuana plants near the outbuilding—the district court correctly found a nexus sufficient to establish probable cause.

In evaluating probable cause, Witherspoon asks us to excise the portions of the search warrant affidavit describing the location of the plants as "between the weeds behind [the] residence and [the] corn," the footprints leading from the plants to the outbuilding, and the five large plants located near the outbuilding. He contends that the police officers could not see the footprints and marijuana plants near his outbuilding without following the footprints out of the cornfield and onto

the bare patch of land surrounding his outbuildings—an area he claims lies within the curtilage of his home. Because the officers entered this clearing without a warrant, Witherspoon argues that the affidavit's statements describing the plants near the outbuilding and the footprints are the products of an unlawful search.

The district court disagreed. Crediting McArthur's testimony that he could see the trail of footprints and the marijuana plants from the edge of the cornfield, the court found that "none of the evidence obtained from the illegal search was used in the search warrant affidavit." *See Widgren v. Maple Grove Twp.*, 429 F.3d 575, 581 (6th Cir. 2005) (holding that naked-eye observations of a house or property from neighboring property or open fields do not constitute Fourth Amendment searches).

We do not find this conclusion clearly erroneous, but Witherspoon's arguments on appeal fail for a more fundamental reason: Witherspoon did not request, and the district court did not make, factual findings regarding the extent of Witherspoon's curtilage. Because the district court found that the footprints and marijuana plants were visible from the edge of the cornfield—an area everyone agreed lay outside the curtilage—it rejected Witherspoon's argument without delineating the boundaries of the curtilage. The absence of a finding on the extent of Witherspoon's curtilage is fatal to his arguments on appeal, because he must demonstrate an expectation of privacy in the area behind his outbuildings before claiming that the officers intruded on that expectation. While the Fourth Amendment's protections extend to a home's curtilage, *Oliver v. United States*, 466 U.S.

170, 180 (1984), Witherspoon, as proponent of the motion to suppress, bears the burden of establishing that the challenged search violated his Fourth Amendment rights. *United States v. Richards*, 659 F.3d 527, 536 (6th Cir. 2011).

Witherspoon fails to meet this burden. He comes nearest to proving an incursion on his privacy by pointing to McArthur's admission that he did not see the marijuana plants next to the outbuildings until he stood "very close" to them. The district court acknowledged that the plants located next to Witherspoon's outbuilding sat "within the curtilage," and the government conceded the point. But showing that McArthur verged on entering the curtilage does not show that he invaded it, and we accordingly find no reason to strike any of the challenged evidence from the affidavit supporting probable cause.

Witherspoon offers a stronger argument that the officers invaded his privacy by entering his metal outbuilding, where they found another tray of marijuana plants. McArthur responds that officer safety justified the intrusion. Fresh footprints in the mud—McArthur estimates that the tracks were less than six hours old—led from the marijuana seedlings in the cornfield to the door of the metal outbuilding. These circumstances, McArthur claims, led him to fear that someone might be hiding, armed, inside the building. Witherspoon rejects this explanation, citing the exclusionary rule, which "prohibits the admission of evidence seized in searches and seizures that are deemed unreasonable under the Fourth Amendment" as requiring suppression of the outbuilding evidence. *United States v. Kennedy*, 61 F.3d 494, 497 (6th Cir. 1995). We need not settle this disagreement

because, as the district court correctly found, the inevitable-discovery doctrine trumps Witherspoon's argument.

The inevitable-discovery doctrine provides that where "tainted evidence would be admissible if in fact discovered through an independent source, it should be admissible if it inevitably would have been discovered." *Murray v. United States*, 487 U.S. 533, 539 (1988). The doctrine thus avoids "put[ting] the police in a worse position than they would have been in absent any error or violation." *Nix v. Williams*, 467 U.S. 431, 443 (1984). We apply the rule in two settings: (1) when an "independent, untainted investigation . . . inevitably would have uncovered the same evidence"; or (2) when there exist "other compelling facts establishing that the disputed evidence inevitably would have been discovered." *Kennedy*, 61 F.3d at 499. Circuit precedent holds that "an alternate, independent line of investigation is not required for the inevitable discovery exception to apply." *Id.* at 499-500.

We apply the doctrine where officers follow a potentially illegal search with a valid, warrant-supported search. *See, e.g.*, *Murray*, 487 U.S. at 541-43 (remanding case for consideration of the inevitable-discovery doctrine where police initially conducted an unlawful search of a warehouse but later obtained a search warrant and conducted a lawful search); *United States v. Jenkins*, 396 F.3d 751, 758-60 (6th Cir. 2005) (upholding the denial of a motion to suppress where initial unlawful search was followed by a lawful search); *United States v. Keszthelyi*, 308 F.3d 557, 574 (6th Cir. 2002) ("[T]he inevitable discovery exception to the exclusionary rule applies when . . .

evidence discovered during an illegal search would have been discovered during a later legal search and the second search inevitably would have occurred in the absence of the first.").

That is precisely what happened here. First, the search could not affect the issuing judge's decision to issue a warrant because the search warrant affidavit included no information gleaned from the unlawful search. Before entering the outbuilding, the officers legally discovered marijuana plants in the nearby cornfield, over a hundred marijuana seedlings in the rows of corn directly behind Witherspoon's home, and several large marijuana plants next to buildings on Witherspoon's property. Nor is there any reason to believe that the officers would refrain from searching the outbuilding absent the initial, unlawful search: if the marijuana surrounding the outbuilding failed to settle a sufficient cloud of suspicion over the building, fresh footprints led from the marijuana seedlings directly to the building's entrance. We thus agree with the district court's conclusion that the officers would have found the evidence in the outbuilding—along with everything else discovered during the later search—absent the initial, allegedly unlawful search.

Finally, Witherspoon presses that McArthur exaggerated some facts and omitted others from the warrant affidavit. Specifically, Witherspoon asserts that McArthur's affidavit (1) lied about the existence of a "continuous" set of footprints from the outbuilding to the marijuana plants in the cornfield; (2) exaggerated the proximity of the trays of small plants to Witherspoon's residence; and (3) failed to inform the issuing judge that he conducted a warrantless search of Witherspoon's outbuilding and that Witherspoon did not own the cornfield behind the property. Under *Franks v.*

*Delaware*, a court must strike from a warrant affidavit

> statements that the defendant can prove by a preponderance of the evidence to be both (a) materially false and (b) made with reckless or intentional disregard for their falsity. If the redacted affidavit, purged of recklessly and materially false statements, no longer establishes probable cause, then the court must hold the resulting search warrant invalid.

*United States v. Elkins*, 300 F.3d 638, 649 (6th Cir. 2002) (citing *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978)) (footnote omitted).

After hearing McArthur's testimony and reviewing the evidence presented at the suppression hearing, the district court rejected Witherspoon's arguments. It instead (1) credited McArthur's testimony that he "was able to follow a set of footprints . . . to the building and back"; (2) accepted McArthur's explanation of his alleged exaggeration of the marijuana seedlings' proximity to Witherspoon's residence; and (3) found that McArthur's failure to mention his unlawful search would not have affected the issuing judge's probable cause determination, because none of the evidence obtained as a result of the unlawful search was included in the affidavit. Considering the evidence in the light most favorable to the government, we discern no error in these conclusions. *See id*.

III.

Accordingly, we **AFFIRM** the district court's denial of Witherspoon's motion to suppress.