[Cite as *State v. Pippin*, 2017-Ohio-6970.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NOS. C-160380 |
| | | C-160381 |
| Plaintiff-Appellee, | : | TRIAL NO. B-1300383 |
| vs. | : | |
| | | *O P I N I O N.* |
| TONY PIPPIN, | : | |
| Defendant-Appellant. | : | |

Criminal Appeals From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: July 26, 2017

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Philip R. Cummings*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Bryan R. Perkins*, for Defendant-Appellant.

**DETERS, Judge.**

{¶1}    Tony Pippin appeals his convictions for rape and pandering sexually-oriented matter involving a minor, stemming from the discovery of videos on his cell phone that showed him raping a 15-year-old girl.  We hold that the video evidence was admissible at trial because it was discovered pursuant to a lawful search warrant.  We also conclude that the court properly denied suppression motions without an evidentiary hearing on the validity of the warrant.  Finally, we hold that the court properly sentenced Pippin.  Therefore, we affirm the trial court's judgment.

*Background*

{¶2}    Police seized Pippin's cell phone and other evidence from his residence when they executed a search warrant issued on December 15, 2012.  Police had obtained the warrant during their investigation into multiple rape and burglary offenses.  After Pippin's phone was seized, it was secured in the property room of the Delhi Township Police Department.

{¶3}    On December 18, 2012, Delhi Township Police Detective Adam L. Cox sought a warrant from a Hamilton County Common Pleas Court judge to authorize the search of the data contained within Pippin's phone.  Before driving from the Hamilton County courthouse back to Delhi, Cox delivered the phone to the forensics unit of the Cincinnati Police Division for extraction of the data.

{¶4}    Cincinnati Police Officer Scott Radigan, a video and cell phone forensics analyst, began preparing Pippin's cell phone for data extraction.  He removed the back of the phone to determine its model number, and then made adjustments to the phone settings to allow for the data transfer.

{¶5} After experiencing initial problems getting the data download to start with his standard equipment, Radigan further examined the phone and opened the photo gallery as part of his troubleshooting. He was eventually able to get the extraction process started by using a different digital forensics product.

{¶6} Before the extraction was completed, Radigan got a call from Cox, who told him to stop the extraction that was in progress. Radigan disconnected the phone from the forensics equipment and pulled the battery out of the phone. According to Cox, he had been about to fax a copy of the search warrant and affidavit to Pippin's attorney when he discovered that the judge had failed to sign the search warrant.

{¶7} Because it was late in the day, Cox believed that the issuing judge was unavailable, so he resubmitted the warrant to the judge the following morning. The judge signed and dated it that day (December 19), and marked it "as of" December 18, 2012. Cox called Radigan and told him to go ahead with the data extraction.

{¶8} Data from the extraction indicated that the phone was next accessed on December 20, 2012, the day that the data extraction was completed. A digital disc containing the extracted data was delivered to Detective Cox. He reviewed the information on the disc and discovered several videos depicting sexual acts with an underage female. Using other data from the download, he was able to identify the 15-year-old victim.

{¶9} Pippin was charged in a 21-count indictment with multiple sex offenses involving four different victims, as well as burglary, robbery, felonious assault, and receiving stolen property. The trial court severed ten of the charges, which related to the child victim depicted in the videos on Pippin's cell phone.

{¶10} In his motions to suppress the videos on his cell phone, Pippin argued that the police had searched the contents of his phone on December 18 without a valid signed warrant. He asserted that the December 19 search warrant did not cure the warrantless search of the phone that had occurred on December 18. Following a hearing at which forensic experts testified, the trial court denied the motions. The court found that Radigan's aborted effort to download data from the phone on December 18 did not constitute a search because there was no evidence that the data partially extracted at the point of interruption was viewed or even viewable. Therefore, the court concluded, the search of the phone occurred no earlier than December 20, when the data was next accessed and the extraction was completed pursuant to the signed December 19 search warrant.

{¶11} After the court denied his motions to suppress, Pippin entered pleas of no contest to the ten charges. The court sentenced Pippin for six offenses but did not dispose of four offenses, by merger or otherwise. We dismissed Pippin's direct appeal for lack of jurisdiction because the trial court's judgment was not a final order. *See State v. Pippin*, 1st Dist. Hamilton No. C-150061, 2016-Ohio-312.

{¶12} Thereafter, the trial court issued a sentencing entry that disposed of the remaining four offenses. The court merged two offenses of sexual battery and two offenses of unlawful sexual conduct with a minor with two rape offenses. The court sentenced Pippin to consecutive eight-year prison terms for the rape offenses, and ordered the terms to run consecutively to concurrent eight-year prison terms for four counts of pandering sexually-oriented matter involving a minor, for a total of 24 years. Pippin now appeals.

*Suppression of the Cell Phone Videos*

{¶13}   In his first assignment of error, Pippin argues that the trial court erred by failing to suppress the contents of his cell phone.   He contends that police conducted the search of his phone in violation of his rights under the Fourth Amendment to the United States Constitution and under Article I, Section 14, of the Ohio Constitution.

{¶14}   Pippin also asserts, for the first time, that the seizure of his cell phone from his residence pursuant to the December 15 search warrant was unlawful. However, in seeking to suppress the evidence against him, Pippin challenged the constitutionality of the search of the phone's contents, but not the seizure of the phone itself.   He did not challenge the validity of the December 15 search warrant in the trial court, and cannot do so for the first time on appeal.   *See State v. Peagler*, 76 Ohio St.3d 496, 500, 668 N.E.2d 489 (1996).   Therefore, he has waived any argument about the seizure of the phone for purposes of appeal.   *Id.*   Accordingly, we address only the arguments regarding the phone's contents.

{¶15}   Appellate review of a motion to suppress presents a mixed question of law and fact.   *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8.   We must accept the trial court's factual findings if they are supported by competent, credible evidence, but we review de novo the trial court's application of the law to those facts.   *Id.*   As a general rule, questions of probable cause are reviewed de novo on appeal.   *Ornelas v. United States*, 517 U.S. 690, 699, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996).

{¶16}   The Fourth Amendment to the United States Constitution protects individuals against unreasonable governmental searches and seizures.   *Accord* Ohio Constitution, Article I, Section 14.   Therefore, absent certain exceptions, police

officers must obtain a warrant before conducting a search. *Franks v. Delaware*, 438 U.S. 154, 164, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). In the context of cell phones, police officers must generally secure a warrant authorizing a search of data on the phone before conducting such a search. *See Riley v. California*, ____ U.S. ____, 134 S.Ct. 2473, 2485, 189 L.Ed.2d 430 (2014); *State v. Smith*, 124 Ohio St.3d 163, 2009-Ohio-6426, 920 N.E.2d 949, syllabus.

{¶17} Under the exclusionary rule, evidence seized in violation of the Fourth Amendment may not be admitted against a defendant in a criminal prosecution, subject to certain exceptions. *Mapp v. Ohio*, 367 U.S. 643, 655, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). In Ohio, the exclusionary rule applies to suppress evidence seized pursuant to an unsigned search warrant. *State v. Williams*, 57 Ohio St.3d 24, 26, 565 N.E.2d 563 (1991) (a search warrant is void ab initio if it is not signed by a judge before the search).

{¶18} Under *Williams*, any search of the contents of Pippin's cell phone that occurred pursuant to the unsigned December 18 warrant would necessarily be unlawful and its fruits suppressed. *See id.* The trial court resolved this issue by determining that no search had occurred before the lawful December 19 search warrant was issued. In so deciding, the court did not address the state's contention that the "inevitable discovery" exception to the exclusionary rule applied. Nonetheless, we hold that the exception applied and that the evidence was not subject to exclusion.

{¶19} Under the inevitable-discovery exception to the exclusionary rule, illegally obtained evidence is admissible at trial if it is established that the evidence would have ultimately or inevitably been discovered during the course of a lawful investigation. *Nix v. Williams*, 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984);

6

*State v. Perkins*, 18 Ohio St.3d 193, 480 N.E.2d 763 (1985), syllabus. The state has the burden to show within a reasonable probability that police officers would have discovered the evidence by lawful means apart from the unconstitutional conduct. *Nix* at 444; *Perkins* at 196.

{¶20} The United States Supreme Court has applied the inevitable-discovery doctrine where police officers followed a potentially illegal search with a later search pursuant to a valid warrant that was wholly independent of the initial illegal entry. *See Murray v. United States,* 487 U.S. 533, 541-543, 108 S.Ct. 2529, 101 L.Ed.2d 472 (1988) (remanding the case for consideration of the inevitable-discovery exception where police conducted an unlawful warehouse search but later obtained a search warrant and conducted a lawful search); *Segura v. United States*, 468 U.S. 796, 813-816, 104 S.Ct. 3380, 82 L.Ed.2d 599 (1984) (illegal entry on premises by police did not require suppression of evidence later discovered at the premises when executing a search warrant obtained on information unconnected with the initial entry). The exception applies when "evidence discovered during an illegal search would have been discovered during a later legal search and the second search inevitably would have occurred in the absence of the first." *United States v. Keszthelyi*, 308 F.3d 557, 574 (6th Cir.2002).

{¶21} Ohio courts have applied the inevitable-discovery exception under certain circumstances to admit evidence seized from digital camera memory cards and cell phones in cases where police had initially examined the contents of the items without authority. In those cases, the courts determined that the evidence would have been inevitably discovered in the course of a lawful investigation. *See State v. Workman*, 2015-Ohio-5049, 52 N.E.3d 286, ¶ 46 (3d Dist.); *State v. Jackson*, 11th Dist. Trumbull No. 2006-T-0123, 2007-Ohio-6932, ¶ 35.

{¶22} In *Workman*, police officers sought and were granted a warrant authorizing the search of the contents of both a cell phone and a secure digital ("SD") memory card from a camera. A forensics analyst discovered a second SD card as he was examining the evidence delivered to him and assumed that he was authorized to search both SD cards. *Workman* at ¶ 31.

{¶23} The Third Appellate District held that photographs obtained from the search of the second SD card were admissible at trial because the state showed by a reasonable probability that the photographs would have been inevitably discovered during the course of a lawful investigation. *Id.* at ¶ 42. The court cited the investigating detective's testimony that he would have sought a warrant to search the second SD card had he known it existed. The court then concluded that the same facts demonstrating probable cause to search the cell phone and the first SD card "would have been used to establish the requisite probable cause to secure a search warrant to search the second SD card." *Id.* at ¶ 44. The court stated:

> This is not a case where law enforcement could have obtained a warrant, yet *chose* not to. * * * Applying the inevitable-discovery doctrine to this case prevents the State from being put in a worse position as a result of the wrongful search because the evidence would have been inevitably discovered by lawful means.

(Citations omitted.) *Id.* at ¶ 45.

{¶24} In *Jackson*, the Eleventh Appellate District similarly held that the exclusionary rule did not apply to bar the contents of the defendant's cell phones in a prosecution for rape and pandering obscenity involving a minor. *Jackson*, 11th Dist. Trumbull No. 206-T-0123, 2007-Ohio-6932, at ¶ 35. The court held that even though police officers had conducted an unlawful warrantless search of the phones,

8

the contents of the phones would have been inevitably discovered pursuant to the lawful warrant that the officers secured soon after the initial search. *Id.* The court stated:

> This is not a case where the police illegally searched and seized an item, but rather, the phones were already in lawful custody and a search warrant was pending. Most importantly, the officers had grounds for the issuance of a warrant to search the phones and had taken steps to procure a warrant.

*Id.* at ¶ 33.

{¶25} In this case, we assume for the sake of argument that Officer Radigan's actions on December 18 constituted an unlawful warrantless search. We hold that even if an unlawful search occurred, the state proved by a reasonable probability that the videos on Pippin's phone would have been, and in fact were, inevitably discovered pursuant to the lawful December 19 warrant. In seeking the December 19 warrant, the police relied on the same facts used to establish the requisite probable cause to secure the December 18 warrant, and included no information learned from Officer Radigan's initial processing attempt. *See Workman*, 2015-Ohio-5049, 52 N.E.3d 286, at ¶ 44; *Jackson* at ¶ 33. Therefore, the unlawful search "could not affect the issuing judge's decision to issue a warrant because the search warrant affidavit included no information gleaned from the unlawful search." *See United States v. Witherspoon*, 467 Fed.Appx. 486, 491 (6th Cir.2012). Therefore, the contents of the phone were admissible at trial under the inevitable-discovery exception. We recognize that we are deciding the suppression issue on grounds different from those relied on by the trial court, but our decision rests squarely on

evidence adduced at the suppression hearing, and the trial court had an opportunity to address the issue. *See Peagler*, 76 Ohio St.3d at 501, 668 N.E.2d 489.

{¶26} Pippin also asserts that the December 18 search warrant was issued without probable cause. We will presume that his argument applies also to the December 19 warrant, which was issued upon the same affidavit that supported the unsigned December 18 warrant.

{¶27} In determining the sufficiency of probable cause in an affidavit submitted in support of a search warrant, "[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, * * * there is a fair probability that contraband or evidence of a crime will be found in a particular place." *State v. George*, 45 Ohio St.3d 325, 544 N.E.2d 640 (1989), paragraph one of the syllabus, quoting *Illinois v. Gates*, 462 U.S. 213, 238-239, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). Great deference must be given to a magistrate's determination of probable cause, and "doubtful or marginal cases in this area should be resolved in favor of upholding the warrant." *George* at paragraph two of the syllabus.

{¶28} Here, as we will discuss more fully in our analysis of the second assignment of error, the warrant affidavit amply supported the issuing magistrate's determination of probable cause. The affidavit set forth facts establishing a fair probability that evidence relating to the sex and burglary offenses would be found on Pippin's phone.

{¶29} Finally, Pippin challenges the particularity of the search warrant. He asserts that the warrant failed to identify with particularity what the police were looking for in his cell phone.

{¶30} In assessing whether a warrant meets the particularity requirement of the Fourth Amendment, courts must consider "whether the warrant provides sufficient information to 'guide and control' the judgment of the executing officer in what to seize," and "whether the category as specified is too broad in that it includes items that should not be seized." (Internal citations omitted.) *State v. Castagnola*, 145 Ohio St.3d 1, 2015-Ohio-1565, 46 N.E.3d 638, ¶ 79. Even if a search warrant includes broad categories of items to be seized, it "may nevertheless be valid when the description is 'as specific as the circumstances and the nature of the activity under investigation permit.' " *Id.* at ¶ 80, quoting *Guest v. Leis*, 255 F.3d 325, 336 (6th Cir.2001).

{¶31} The December 19 search warrant set forth the issuing judge's findings that (1) there was probable cause to believe that Pippin had committed rape and burglary offenses, (2) there was probable cause to believe that evidence relating to the rape and burglary offenses would be obtained through a search of the cell phone, and (3) in particular, "the evidence seized will reveal details of the involvement of the participants, identities of victims, owners, and evidence of the alleged violations." The warrant particularly described Pippin's cell phone by brand, model, serial, and assigned telephone number, and authorized a search of the phone for "Electronic Serial Numbers, Mobile Identification Numbers, any and all other data that has been programmed into and/or received or recorded by" the device.

{¶32} In this case, the warrant was neither overbroad nor insufficiently particular. The warrant specifically identified the cell phone to be searched and limited the scope of the search to evidence of particular crimes*. See Castagnola* at ¶ 79. The language of the warrant provided sufficient guidance to the police to search for only the items to be seized: evidence relating to the crimes of rape and burglary.

"There is nothing inherently improper about the authorization to search the entire contents of the phone[s], provided * * * that there is a fair probability of finding evidence related to the [listed crime]." *State v. Knoefel*, 11th Dist. Lake No. 2014-L-088, 2015-Ohio-5207, ¶ 128.

{¶33} Consequently, we hold that the trial court properly denied Pippin's motions to suppress the contents of his cell phone. We overrule the first assignment of error.

### *Franks v. Delaware Hearing*

{¶34} In his second assignment of error, Pippin argues that the trial court erred by not conducting an evidentiary hearing on his challenge to the veracity of statements in the affidavit supporting the search warrant for the contents of his cell phone. He contends that a hearing was required because he had sufficiently established that the warrant affidavit contained misleading and false statements.

{¶35} After a search warrant has been issued and executed, a defendant may, in limited circumstances, challenge the truthfulness of factual statements made in an affidavit supporting the warrant. *Franks*, 438 U.S. at 155-156, 98 S.Ct. 2674, 57 L.Ed.2d 667. To mandate an evidentiary hearing, a defendant must make a substantial preliminary showing that an affiant knowingly and intentionally, or with reckless disregard for the truth, included a false statement in the warrant affidavit, and that the false statement was necessary to the finding of probable cause. *Id.*

{¶36} Even if a defendant makes a "substantial preliminary showing of a knowing, intentional, or reckless falsity," he is not automatically entitled to an evidentiary hearing. *State v. Roberts*, 62 Ohio St.2d 170, 178, 405 N.E.2d 247 (1980); *see Franks* at 171-172; *State v. Jordan*, 1st Dist. Hamilton No. C-060336,

2007-Ohio-3449, ¶ 11. If, after the challenged statements are disregarded, the warrant affidavit contains sufficient material to support a finding of probable cause, no hearing is required. *Roberts* at 178; *Franks* at 171-172.

{¶37} In this case, without determining whether Pippin had met his initial burden to show that the affiant had wrongfully included false statements in the warrant affidavit, the trial court set aside the allegedly false material and concluded that the remainder of the affidavit sufficiently supported a finding of probable cause.

{¶38} The trial court's conclusion is supported by the record. After redaction of the challenged statements, the affidavit set forth that on September 1, 2012, a woman left a certain bar in White Oak, stopped for gas at a Speedway station, and then drove to her Delhi Township home. Once home, a man with a semiautomatic pistol attacked and raped her. Surveillance videos from the Speedway and other businesses showed an older style, white or light grey Jeep Cherokee that had pulled next to a pump at a BP station across the street. No one got out of the vehicle or pumped gas before the vehicle moved to another lot and remained there until the woman had finished at Speedway.

{¶39} On September 8, 2012, while police were conducting surveillance near the same White Oak bar, a police officer stopped Pippin for a traffic violation. The officer believed that Pippin's Jeep Cherokee was similar to a photo of the Jeep Cherokee at the BP station on the night of the Delhi rape.

{¶40} On September 19, 2012, a GPS device was attached to Pippin's vehicle on the authority of search warrants, and police began tracking its movements.

{¶41} On October 26, 2012, Pippin contacted police about being a confidential informant. He told them that he carried a simulator 9 mm gun. He "Googled" a picture of the simulator gun on his cell phone and officers noted that it

looked like a real 9 mm semiautomatic firearm. Pippin initially told them that he drove a grey 1989 Jeep Cherokee, but admitted that he had painted it blue.

{¶42} On November 21, 2012, a police officer took a burglary report on a home on Squirrel Creek Lane in Colerain Township. The property stolen in the burglary included a cell phone, credit cards, and a camera.

{¶43} On December 15, 2012, police conducted a search of Pippin's residence pursuant to a search warrant. The camera stolen during the Squirrel Creek Lane burglary was recovered in Pippin's bedroom. The police also recovered Pippin's cell phone and transported it to the property room of the Delhi Township Police station.

{¶44} The affiant, Detective Cox, had experience and training in the investigation of burglary and rape offenses. Through his experience and training, Cox learned that suspects who engage in that type of criminal activity frequently used cell phones and other data storage devices to maintain records or to conduct communications related to their offenses. He expected that the search of the data in Pippin's phone would (1) establish that Pippin had committed the burglary offense; (2) contain pictures or video that may have been taken during the offenses; and (3) reveal the identity of persons to whom Pippin may have sold property taken in the burglary.

{¶45} Following our review of the redacted warrant affidavit, we conclude that it sufficiently supported the issuing magistrate's determination of probable cause. *See George*, 45 Ohio St.3d at 329, 544 N.E.2d 640; *Gates*, 462 U.S. at 238, 103 S.Ct. 2317, 76 L.Ed.2d 527. The remainder of the affidavit established a fair probability that evidence of the burglary or rape offenses would be found in the contents of Pippin's cell phone. Therefore, any inaccuracies in the affidavit were irrelevant, and the trial court properly denied Pippin's request for an evidentiary

14

hearing on the December 18 search warrant. *See Franks*, 438 U.S. at 172, 98 S.Ct. 2674, 57 L.Ed.2d 667, fn. 8. We overrule the second assignment of error.

### *Merger*

{¶46} In his third assignment of error, Pippin argues that the trial court erred by failing to merge allied offenses of similar import. He contends that the court should have merged the two rape offenses into a single rape offense and the four pandering offenses into a single pandering offense.

{¶47} Under R.C. 2941.25(B), a defendant may be convicted of multiple offenses arising from the same conduct if any one of the following is true: (1) the conduct constitutes offenses of dissimilar import, (2) the conduct shows that the offenses were committed separately, or (3) the conduct shows that the offenses were committed with separate animus. *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, paragraph three of the syllabus.

{¶48} The defendant bears the burden of demonstrating that he is entitled to merger at sentencing pursuant to R.C. 2941.25. *State v. Washington*, 137 Ohio St.3d 427, 2013-Ohio-4982, 999 N.E.2d 661, ¶ 18, citing *State v. Mughni*, 33 Ohio St.3d 65, 67, 514 N.E.2d 870 (1987). We review the trial court's merger determination de novo. *See State v. Williams*, 134 Ohio St.3d 482, 2012-Ohio-5699, 983 N.E.2d 1245, ¶ 28.

{¶49} With respect to the rape offenses, Pippin argues that both counts of rape relate to the "same act, same day, same location, and same victim." However, the record demonstrates that, although both rape counts involved the same type of sexual activity—fellatio—and were committed within a short time of each other, there were two separate and distinct acts of penetration, separated by significant

intervening acts. *See State v. Jones*, 78 Ohio St.3d 12, 14, 676 N.E.2d 80 (1997). The first act of rape occurred while the girl was apparently semi-conscious. That act was followed by a withdrawal from the girl's mouth, the girl's apparent loss of consciousness, and then the defendant's forceful penetration of the unconscious girl's mouth.

{¶50} Next, Pippin asserts that the four counts of pandering related to four video files found on his phone that recorded the same course of conduct. However, multiple convictions are allowed for each individual video file because a separate animus exists every time a separate image or file is created and saved. *See State v. Stone*, 1st Dist. Hamilton No. C-040323, 2005-Ohio-5206, ¶ 9; *State v. Hendricks*, 8th Dist. Cuyahoga No. 92213, 2009-Ohio-5556, ¶ 35; *State v. Eal*, 10th Dist. Franklin No. 11AP-460, 2012-Ohio-1373, ¶ 93; *State v. Starcher*, 5th Dist. Stark No. 2015CA00058, 2015-Ohio-5250, ¶ 35; *State v. Lucicosky*, 7th Dist. Mahoning No. 16 MA 0112, 2017-Ohio-2960, ¶ 23.

{¶51} Therefore, the two counts of rape and the four counts of pandering were committed separately for purposes of R.C. 2941.25, and the trial court did not err by failing to merge them for sentencing. We overrule the third assignment of error.

### *Consecutive Sentences*

{¶52} In his fourth assignment of error, Pippin argues that the trial court erred by imposing consecutive sentences. We will not vacate or modify a felony sentence unless we clearly and convincingly find either that the record does not support the trial court's findings under the relevant statutes or that the sentence is

otherwise contrary to law. *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 1.

{¶53} Here, the trial court made the consecutive-sentencing findings required under R.C. 2929.14(C), announced the findings at the sentencing hearing, and incorporated the findings into its sentencing entry. *See State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, syllabus; *State v. McGee*, 1st Dist. Hamilton No. C-150496, 2016-Ohio-7510, ¶ 32. Therefore, the court did not err in imposing consecutive sentences. We overrule the fourth assignment of error and affirm the judgment of the trial court.

Judgment affirmed.

**CUNNINGHAM, P.J.**, and **MILLER, J.**, concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.

17