[Cite as *State v. Schneider*, 2021-Ohio-653.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ATHENS COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | Case No. 19CA1 |
| Plaintiff-Appellee, | : | |
| v. | : | <u>DECISION AND</u><br><u>JUDGMENT ENTRY</u> |
| BENJAMIN SCHNEIDER, | : | |
| Defendant-Appellant. | : | **RELEASED 3/3/2021** |

_____
APPEARANCES:

Timothy Young, Ohio Public Defender, and Jeremy Masters, Assistant State Public Defender, Columbus, Ohio, for appellant.

Keller J. Blackburn, Athens County Prosecutor, and Elizabeth L. Pepper, Athens County Assistant Prosecutor, Athens, Ohio, for appellee.
_____
Hess, J.

{¶1} Benjamin Schneider appeals his convictions in two cases, Athens County Court of Common Pleas Case Nos. 17CR0100 and 17CR0382, for multiple counts of pandering sexually oriented matter involving a minor, illegal use of a minor in a nudity-oriented material or performance, voyeurism, and possessing criminal tools. In his first assignment of error, Schneider contends that the trial court erred when it failed to merge certain offenses for purposes of sentencing. However, he failed in his burden to establish R.C. 2941.25 prohibits multiple punishments for the offenses at issue. Therefore, we reject his merger arguments.

{¶2} In his second assignment of error, Schneider asserts that insufficient evidence supports his conviction for pandering sexually oriented matter involving a minor in connection with video fragments of child pornography involving a Russian

minor.   After viewing the evidence in a light most favorable to the prosecution, we conclude that any rational trier of fact could have found the essential elements of this count proven beyond a reasonable doubt.  Therefore, we reject Schneider's argument.

{¶3}   In his third assignment of error, Schneider maintains that the trial court erred when it convicted him of ten counts of possessing criminal tools in violation of R.C. 2923.24(A).  Schneider claims that he used the ten items related to those counts in concert, and the statute does not permit multiple convictions in that situation.  However, under the statute, whenever a person possesses or controls any substance, device, instrument, or article with purpose to use it criminally, the person is guilty of possessing criminal tools.  The statute does not preclude multiple convictions for items used in concert.  Accordingly, we overrule the assignments of error and affirm the trial court's judgment.

## I.  FACTS

{¶4}   In January 2017, Schneider's minor stepdaughter discovered a camera in a shower she was using.  Schneider admitted that he had put the camera in the shower to watch her and had put a second camera in her bedroom.  His wife contacted the authorities.  Law enforcement collected and searched various electronics and storage devices that were in the home and found several videos of Schneider's stepdaughter in the bathroom.  They also found video fragments of a child pornography file involving a Russian minor.

{¶5}   In Case No. 17CR0100, the Athens County grand jury indicted Schneider on two counts of pandering sexually oriented matter involving a minor, ten counts of illegal use of a minor in a nudity-oriented material or performance, six counts of

voyeurism, and six counts of possessing criminal tools.  He pleaded not guilty. Subsequently, in Case No. 17CR0382, the grand jury indicted Schneider on 128 counts of illegal use of a minor in a nudity-oriented material or performance, six counts of voyeurism, eight counts of pandering sexually oriented matter involving a minor, one count of tampering with evidence, and five counts of possessing criminal tools.  He also pleaded not guilty to those charges, and the trial court consolidated the cases. Subsequently, at the request of the state, in Case No. 17CR0382 the court dismissed 56 counts of illegal use of a minor in a nudity-oriented material or performance, four counts of pandering sexually oriented matter involving a minor, and the tampering with evidence count.  Schneider waived his right to a jury trial, and the court conducted a bench trial on the remaining counts.

{¶6}    The trial court found Schneider guilty on 110 of the 111 remaining counts; it found him not guilty on one count of possessing criminal tools.  On July 17, 2018, the trial court issued an entry sentencing Schneider on 109 counts, resulting in an aggregate eight-year prison term.  The court did not sentence him on Count 35 in Case No. 17CR0382 even though the court had found him guilty on that count. After Schneider filed a notice of appeal from the July 17, 2018 entry, he moved this court to remand the case to the trial court to sentence him on Count 35 in Case No. 17CR0382 and issue a final, appealable order.  Before we ruled on the motion, on December 18, 2018, the trial court issued an entry sentencing Schneider on that count.  Subsequently, we determined that we lacked jurisdiction over Schneider's appeal because the July 17, 2018 entry was not a final, appealable order and dismissed the appeal.  Schneider then appealed from the December 18, 2018 entry.

## II.  ASSIGNMENTS OF ERROR

{¶7}    Schneider presents three assignments of error:

I.  The trial court failed to merge allied offenses of similar import.

II.  The trial court violated Mr. Schneider's rights to due process and a fair trial when, in the absence of sufficient evidence, the trial court convicted him of pandering sexually-oriented material involving a minor for Count 139(147) in case number 17CR0382.

III.  The trial court erred when it convicted Mr. Schneider for multiple counts of possession of criminal tools for individual items, used in concert, in the commission of felony offenses.

## III.  ALLIED OFFENSES OF SIMILAR IMPORT

{¶8}    In the first assignment of error, Schneider contends that the trial court erred when it failed to merge allied offenses of similar import.

### A.  General Principles and Standard of Review

{¶9}    The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb."  "This protection applies to Ohio citizens through the Fourteenth Amendment to the United States Constitution * * * and is additionally guaranteed by the Ohio Constitution, Article I, Section 10."  *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, ¶ 10.  "This constitutional protection prohibits multiple punishments in a single trial for the same conduct in the absence of a clear indication of contrary legislative intent."  *State v. Fannon*, 2018-Ohio-5242, 117 N.E.3d 10, ¶ 129 (4th Dist.), citing *Missouri v. Hunter*, 459 U.S. 359, 366, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983).

{¶10} "The General Assembly enacted R.C. 2941.25 to identify when a court may impose multiple punishments[.]"  *Id.* at ¶ 130.  R.C. 2941.25 states:

(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

{¶11} The sentencing court has a mandatory duty to merge allied offenses. *State v. Stapleton*, 4th Dist. Pickaway No. 19CA7, 2020-Ohio-4479, ¶ 50. However, the defendant has the burden to establish R.C. 2941.25 prohibits multiple punishments. *Id.* at ¶ 52. "We apply a de novo standard to review a trial court's determination of whether offenses constitute allied offenses of similar import requiring merger under R.C. 2941.25." *Fannon* at ¶ 131, citing *State v. Williams*, 134 Ohio St.3d 482, 2012-Ohio-5699, 983 N.E.2d 1245, ¶ 28.

{¶12} The determination whether an offender has been found guilty of allied offenses of similar import "is dependent upon the facts of a case because R.C. 2941.25 focuses on the defendant's conduct," *Ruff,* 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, at ¶ 26, and "an offense may be committed in a variety of ways," *id.* at ¶ 30. In *Ruff*, the Supreme Court of Ohio explained that an accused may be convicted and sentenced for multiple offenses when "(1) the offenses are dissimilar in import or significance—in other words, each offense caused separate, identifiable harm, (2) the offenses were committed separately, or (3) the offenses were committed with separate animus or motivation." *Id.* at ¶ 25.

B.  Relevant Statutes

{¶13} R.C. 2907.08(C), the statute on voyeurism, states:  "No person, for the purpose of sexually arousing or gratifying the person's self, shall * * * surreptitiously invade the privacy of another to videotape, film, photograph, otherwise record, or spy or eavesdrop upon the other person in a state of nudity if the other person is a minor."  At the time of Schneider's offenses, R.C. 2907.322(A)(1), the statute on pandering sexually oriented matter involving a minor, stated:  "No person, with knowledge of the character of the material or performance involved, shall * * * [c]reate, record, photograph, film, develop, reproduce, or publish any material that shows a minor participating or engaging in sexual activity, masturbation, or bestiality[.]"  Also, at the time of Schneider's offenses, R.C. 2907.323(A)(1), the statute on illegal use of a minor in a nudity-oriented material or performance, provided that with an exception not applicable here, "[n]o person shall * * * [p]hotograph any minor who is not the person's child or ward in a state of nudity, or create, direct, produce, or transfer any material or performance that shows the minor in a state of nudity * * *."

C.  Counts 1, 31, and 52 in Case No. 17CR0382

{¶14} Schneider contends that the trial court should have merged Counts 1, 31, and 52 in Case No. 17CR0382. Counts 1 and 52 alleged a violation of R.C. 2907.323(A)(1), and Count 31 alleged a violation of R.C. 2907.08(C). The supplemental bill of particulars (1) indicated that Schneider committed Count 1 when he "did record [his stepdaughter] in a state of nudity in the shower" and cited a specific video file, (2) indicated that Schneider committed Count 31 when he "mounted a video camera to watch [his stepdaughter] while showering nude as recorded in" the same video file cited

for Count 1, and (3) indicated that Schneider committed Count 52 when he "did record/create the video file of [his stepdaughter] while partially nude in the shower" and cited a different video file than the one cited for Counts 1 and 31. The videos appear to have date and time information within their file names, which Schneider refers to as a "recording timestamp." Counts 1 and 31 related to an asf video file with a recording timestamp of 12/18/16 at 22:34:34,[1] and Count 52 related to a m4v video file with a recording timestamp of 12/18/16 at 22:39:58.

{¶15} Schneider asserts that the recording timestamps demonstrate the video files depict a single event that was recorded on December 18, 2016. He maintains that "multiple files were created from a single recorded event" because the "camera automatically stored recorded data in five-minute increments." He claims merger is appropriate because the offenses arose from the same event, involved similar import or harm (using a camera to record his stepdaughter in a state of nudity in the bathroom), and involved the same animus (recording his stepdaughter in the bathroom on December 18, 2016).

{¶16} The state contends none of the counts merge. It asserts Schneider committed Counts 1 and 31 with a separate animus. It also asserts the counts resulted in separate, identifiable harm because for Schneider's stepdaughter, "knowing that a video file was created is separate from knowing that her step-father was sexually gratified by invading her privacy and watching her nude in the shower." In addition, the state argues that the video related to Counts 1 and 31 depicts a different event than the video related to Count 52. Alternatively, it argues that even if Schneider's argument is

---

[1] Throughout this opinion, we have changed the format in which the "recording timestamp" information appears in the file names for ease of reading.

"factually sound," the videos had different creation dates, had different file extensions, and were saved in different folders, and a separate animus exists each time a video is downloaded and saved.

{¶17} Schneider failed in his burden to show that the trial court should have merged Counts 1 and 31. Each count resulted in separate, identifiable harm. When Schneider mounted the video camera to watch his stepdaughter showering (Count 31), he invaded her privacy. *See* R.C. 2907.08(C) (requiring a surreptitious invasion of another's privacy). When he recorded her (Count 1), he created a permanent record of her victimization. *See generally State v. Martin*, 149 Ohio St.3d 292, 2016-Ohio-7196, 75 N.E.3d 109, ¶ 12 ("child-nudity-oriented material leaves a permanent record that can haunt a child into adulthood").

{¶18} Schneider also failed in his burden to show that the trial court should have merged Counts 1 or 31 with Count 52. Contrary to Schneider's suggestion, the video files related to those counts do not depict a single event that a single camera automatically stored in five-minute increments. Although the recording timestamps for the video files are about five minutes apart, the video file related to Counts 1 and 31 is about 15 minutes long, and the video file related to Count 52 is about 10 minutes long. The footage in the file related to Counts 1 and 31 was filmed from a different angle than the footage in the file related to Count 52. In the Counts 1 and 31 footage, the camera appears to be inside and above the shower, looking down into the shower. In the Count 52 footage, the camera appears to be outside the shower but directed towards it. The only way these videos could relate to a single event is if two cameras had been used, and Schneider's merger argument does not consider that scenario.

{¶19} We overrule the first assignment of error to the extent it asserts the court should have merged Counts 1, 31, and 52 in Case No. 17CR0382.

### D. Counts 2, 32, and 58 in Case No. 17CR0382

{¶20} Schneider contends that the trial court should have merged Counts 2, 32, and 58 in Case No. 17CR0382. The parties' arguments regarding these counts are similar to their arguments regarding Counts 1, 31, and 52 in 17CR0382.

{¶21} Counts 2 and 58 alleged a violation of R.C. 2907.323(A)(1), and Count 32 alleged a violation of R.C. 2907.08(C). The supplemental bill of particulars (1) indicated that Schneider committed Count 2 when he "did record [his stepdaughter] in a state of nudity in the shower" and cited a specific video file, (2) indicated that Schneider committed Count 32 when he "mounted a video camera to watch [his stepdaughter] while showering nude as recorded in" the same video file cited for Count 2, and (3) indicated that Schneider committed Count 58 when he "did record/create the video file of [his stepdaughter] while nude in the shower and the toilet" and cited a different video file than the one cited for Counts 2 and 32. Counts 2 and 32 related to an asf video file with a recording timestamp of 12/21/16 at 09:57:26, and Count 58 related to a m4v video file with a recording timestamp of 12/21/16 at 09:41:54.

{¶22} Schneider failed in his burden to show that the trial court should have merged Counts 2 and 32. Each count resulted in separate, identifiable harm. When Schneider mounted a camera to watch the victim showering (Count 32), he invaded her privacy. *See* R.C. 2907.08(C) (requiring a surreptitious invasion of another's privacy). When he recorded her (Count 2), he created a permanent record of her victimization. *See generally Martin*, 149 Ohio St.3d 292, 2016-Ohio-7196, 75 N.E.3d 109, at ¶ 12

("child-nudity-oriented material leaves a permanent record that can haunt a child into adulthood").

**{¶23}** Schneider also failed in his burden to show that the trial court should have merged Counts 2 or 32 with Count 58. The video file related to Count 58 depicts the victim entering the bathroom and using the toilet and shower; it ends while she is in the shower but is not visible because the curtain is closed. The video file related to Counts 2 and 32 was filmed from the same angle and begins while the shower curtain is closed; later in the video, the victim exits the shower. While it is possible that the two videos may have been recorded around the same time, they were not recorded simultaneously. "The recording of each video 'constitutes a new and distinct crime because "the mere fact that the crimes occurred in quick succession does not mean that they were not committed separately or with separate animus." ' " *State v. Pedraza*, 9th Dist. Medina No. 19CA0049-M, 2020-Ohio-2661, ¶ 12, quoting *State v. Duhamel*, 8th Dist. Cuyahoga No. 102346, 2015-Ohio-3145, ¶ 60, quoting *State v. Eal*, 10th Dist. Franklin No. 11AP-460, 2012-Ohio-1373, ¶ 93. "In fact, 'multiple convictions are allowed for each individual video file because a separate animus exists every time a separate image or file is created and saved.' " *Id.*, quoting *State v. Pippin*, 2017-Ohio-6970, 94 N.E.3d 1186, ¶ 50 (1st Dist.). We therefore conclude that Schneider recorded each video separately and with a separate animus. *See id.*

**{¶24}** Schneider's suggestion that he cannot be punished for recording each video because his camera automatically stored footage from a single event in five-minute increments is not well-taken. Schneider directs our attention to Detective Ryan Gillette's testimony about video files on two SD cards. Detective Gillette testified that it

seemed like each file on one of the SD cards was "five minutes long," and while he could not confirm whether the files depicted one event without rewatching them, it "sounds accurate" to say that they do. Detective Gillette testified that another SD card appeared to contain files that depicted one event (the discovery of the camera and aftermath) and that it was his understanding that the camera stored the files that way.

{¶25} The video files related to Counts 2, 32, and 58, were found on an external hard drive and were not five-minutes long—each video was about 15 minutes long. The fact that Schneider recorded videos of varying lengths (ranging from five to 15 minutes) is circumstantial evidence that he had control over the length of the recordings. In addition, unlike Count 2, Count 58 did not solely relate to the act of recording. Rather, the supplemental bill of particulars specified that Schneider recorded or created the video file associated with that count. There is evidence that Schneider created that file separately from the video file related to Counts 2 and 32—the video files have different file formats and were saved at different times according to the file creation dates.

{¶26} We overrule the first assignment of error to the extent it asserts the court should have merged Counts 2, 32, and 58 in Case No. 17CR0382.

### E. Counts 5 and 35 in Case No. 17CR0382

{¶27} Schneider contends that the trial court should have merged Counts 5 and 35 in Case No. 17CR0382. The parties' arguments regarding these counts are similar to their arguments regarding Counts 1 and 31 in 17CR0382.

{¶28} Count 5 alleged a violation of R.C. 2907.323(A)(1), and Count 35 alleged a violation of R.C. 2907.08(C). The supplemental bill of particulars (1) indicated that Schneider committed Count 5 when he "did record [his stepdaughter] in a state of nudity

on the toilet" and cited a specific video file, and (2) indicated that Schneider committed Count 35 when he "mounted a video camera to watch [his stepdaughter] while nude on the toilet as recorded in" the same video file cited for Count 5. Both counts related to an asf video file with a recording timestamp of 12/23/16 at 21:33:51.

{¶29} Schneider failed in his burden to show that the trial court should have merged Counts 5 and 35. Each count resulted in separate, identifiable harm. When Schneider mounted a camera to watch the victim on the toilet (Count 35), he invaded her privacy. *See* R.C. 2907.08(C) (requiring a surreptitious invasion of another's privacy). When he recorded her (Count 5), he created a permanent record of her victimization. *See generally Martin*, 149 Ohio St.3d 292, 2016-Ohio-7196, 75 N.E.3d 109, at ¶ 12 ("child-nudity-oriented material leaves a permanent record that can haunt a child into adulthood").

{¶30} We overrule the first assignment of error to the extent it asserts the court should have merged Counts 5 and 35 in Case No. 17CR0382.

F.  Count 1 in Case No. 17CR0100 and

Counts 6, 7, 36, 38, and 139 in Case No. 17CR0382

{¶31} Schneider contends that the trial court should have merged Count 1 in Case No. 17CR0100 and Counts 6, 7, 36, 38, and 139[2] in Case No. 17CR0382. Counts 1, 38, and 139 alleged a violation of R.C. 2907.322(A)(1). Counts 6 and 7 alleged violations of R.C. 2907.323(A)(1). Count 36 alleged a violation of R.C.

---

[2] Schneider asserts that when the trial court sentenced him, it interchanged Count 139, which according to the supplemental bill of particulars involved a video of his stepdaughter, and Count 147, which involved the video fragments of child pornography. He did not assign this issue as error, noting that both counts were for pandering and that the "count number reversal does not change the sentence structure." In his appellate brief, Schneider refers to the count involving his stepdaughter as Count 147(139) and the count involving the fragments as 139(147). For the sake of simplicity, and consistent with the supplemental bill of particulars, we will refer to the count involving his stepdaughter as Count 139 and the count involving the fragments as Count 147.

2907.08(C). The parties' arguments regarding these counts are similar to their arguments regarding Counts 1, 31, and 52 in 17CR0382.

**{¶32}** The bill of particulars in Case No. 17CR0100 indicated that Schneider committed Count 1 in that case when he "did record a minor engaged in masturbation" "on or about January 16, 2017 to January 19, 2017." The bill of particulars did not reference a specific video file for that count, but at trial, the state indicated it related to an asf file with a recording timestamp of 1/16/17 at 22:44:01, which was located on a micro SD card with a red stripe. In Case No. 17CR0382, the supplemental bill of particulars (1) indicated that Schneider committed Count 6 when he "did record [his stepdaughter] in a state of nudity in the shower" and cited a specific video file, (2) indicated that he committed Count 7 when he "did record [his stepdaughter] in a state of nudity in the shower" and cited a different video file, (3) indicated that he committed Count 36 when he "mounted a video camera to watch [his stepdaughter] while showering nude as recorded in" the same video file cited for Count 6, (4) indicated he committed Count 38 when he "did record [his stepdaughter] while nude in the shower masturbating" in a specific video file, and (5) indicated he committed Count 139 when he "did record/create the video file of [his stepdaughter] while nude in the shower masturbating" in another video file. The record indicates that Counts 6 and 36 related to a video file that did not have a recording timestamp but had a file creation date of 1/16/17 at 10:49:43 PM, Count 7 related to an asf video file with a recording timestamp of 1/16/17 at 22:28:59, Count 38 related to an asf video with a recording timestamp of 1/16/17 at 22:49:04, and Count 139 related to a m4v video with the same recording timestamp as the video related to Count 38.

{¶33} Schneider failed in his burden to show that the trial court should have merged Counts 6 and 36. Each count resulted in separate, identifiable harm. When Schneider mounted a camera to watch the victim showering (Count 36), he invaded her privacy. *See* R.C. 2907.08(C) (requiring a surreptitious invasion of another's privacy). When he recorded her (Count 6), he created a permanent record of her victimization. *See generally Martin*, 149 Ohio St.3d 292, 2016-Ohio-7196, 75 N.E.3d 109, at ¶ 12 ("child-nudity-oriented material leaves a permanent record that can haunt a child into adulthood").

{¶34} Schneider failed to show that the trial court should have merged Counts 6 or 36 with Counts 1, 7, 38, or 139. Schneider suggests that because the creation date for the video file related to Counts 6 and 36 is close in time to the recording timestamps for the videos related to the other counts, all of the videos depict one event a single camera automatically stored in multiple files. However, the video related to Counts 6 and 36 is filmed from a different angle than the other videos. In the Counts 6 and 36 footage, the camera appears to be outside the shower but directed towards it; in the footage related to the other counts, the camera appears to be inside and above the shower, looking down into the shower. The only way these videos could relate to a single event is if two cameras had been used, and Schneider's merger argument does not consider that scenario.

{¶35} Schneider failed to show that the trial court should have merged Count 38 and Count 139. Although the video files related to those counts appear to contain the same footage (with the footage appearing upside down in one of the files), unlike Count 38, Count 139 did not solely relate to the act of recording. Rather, the supplemental bill

of particulars specified that Schneider recorded or created the video file associated with Count 139. There is evidence that Schneider created that file separately from the video file associated with Count 38—the video files have different file formats and were saved at different times according to the file creation dates.

{¶36} Schneider also failed to show that the trial court should have merged Count 1 with Count 7 or should have merged either of those counts with Count 38 or Count 139. While it is possible that the footage in the Count 1 and Count 7 videos may have been recorded around the same time as the footage in the Count 38/Count 139 videos, they were not recorded simultaneously. Again, "[t]he recording of each video 'constitutes a new and distinct crime because "the mere fact that the crimes occurred in quick succession does not mean that they were not committed separately or with separate animus." ' " *Pedraza*, 9th Dist. Medina No. 19CA0049-M, 2020-Ohio-2661, at ¶ 12, quoting *Duhamel*, 8th Dist. Cuyahoga No. 102346, 2015-Ohio-3145, at ¶ 60, quoting *Eal*, 10th Dist. Franklin No. 11AP-460, 2012-Ohio-1373, at ¶ 93. "In fact, 'multiple convictions are allowed for each individual video file because a separate animus exists every time a separate image or file is created and saved.' " *Id.*, quoting *Pippin*, 2017-Ohio-6970, 94 N.E.3d 1186, at ¶ 50. We therefore conclude that Schneider recorded the footage related to Count 1, Count 7, and Count 38/Count 139 separately and with a separate animus. *See id.* As we previously explained, Schneider's suggestion that he cannot be punished for each video because his camera automatically stored footage from a single event in five-minute increments is not well-taken given the circumstantial evidence that he had control over the length of the recordings.

**{¶37}** We overrule the first assignment of error to the extent it asserts the court should have merged Count 1 in Case No. 17CR0100 with Counts 6, 7, 36, 38, and 139 in Case No. 17CR0382.

## IV. SUFFICIENCY OF THE EVIDENCE

**{¶38}** In the second assignment of error, Schneider contends that insufficient evidence supported his conviction on Count 147 in Case No. 17CR0382 for pandering sexually oriented matter involving a minor in violation of R.C. 2907.322(A)(1). Schneider asserts that the state presented no evidence "that he intentionally obtained" the fragments of child pornography related to that count, "that he watched them, or that he knew the nature of the material." He asserts that the state only showed that the fragments "existed in the computer's RAM and were written into a swap file." He claims that in order to convict him, the trial court had to engage in impermissible inference stacking—"the trial court had to infer that he intentionally obtained the video fragments on his computer, and from that inference, infer that he knew the nature of the material." [*Id.* at 16]

**{¶39}** "When a court reviews a record for sufficiency, '[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' " (Alteration in *Maxwell*.) *State v. Maxwell*, 139 Ohio St.3d 12, 2014-Ohio-1019, 9 N.E.3d 930, ¶ 146, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus, *superseded by constitutional amendment on other grounds as stated in State v. Smith*, 80 Ohio St.3d 89, 102, 684 N.E.2d 668 (1997), fn. 4, and following *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct.

2781, 61 L.E.2d 560 (1979).  This "limited review does not intrude on the jury's role 'to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.' "  *Musacchio v. U.S.*, ___ U.S. ___, 136 S.Ct. 709, 715, 193 L.Ed.2d 639 (2016), quoting *Jackson* at 319.  Our role is "not to assess 'whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction.' "  *State v. Dodson*, 4th Dist. Ross No. 18CA3629, 2019-Ohio-1465, ¶ 11, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 390, 678 N.E.2d 541 (1997) (Cook, J., concurring).

{¶40} The prosecution may establish the elements of an offense by " 'direct evidence, circumstantial evidence, or both.  Circumstantial and direct evidence are of equal evidentiary value.' "  (Citation omitted in *Fannon*.) *Fannon*, 2018-Ohio-5242, 117 N.E.3d 10, at ¶ 100, quoting *State v. Swain*, 4th Dist. Ross No. 01CA2591, 2002 WL 146204, *8 (Jan. 23, 2002).  Circumstantial evidence is " ' "[t]estimony not based on actual personal knowledge or observation of the facts in controversy, but of other facts from which deductions are drawn, showing indirectly the facts sought to be proved." ' " (Alteration in *Nicely*.)  *Dodson* at ¶ 13, quoting *State v. Nicely*, 39 Ohio St.3d 147, 150, 529 N.E.2d 1236 (1988), quoting *Black's Law Dictionary* 221 (5th Ed.1979).  "A trier of fact may not draw '[a]n inference based * * * entirely upon another inference, unsupported by any additional fact or another inference from other facts[.]' " (Alterations in *Cowans*.)  *State v. Cowans*, 87 Ohio St.3d 68, 78, 717 N.E.2d 298 (1999), quoting *Hurt v. Charles J. Rogers Transp. Co.*, 164 Ohio St. 329, 130 N.E.2d 820 (1955), paragraph one of the syllabus.

**{¶41}** Jarod Scott, a computer forensic specialist, testified that Schneider was the "active user" of a partition on a hard drive containing a "swap file" that contained eight video fragments of child pornography. Scott explained that

> a computer has RAM, which is the memory that stores. Everything that's being processed goes into RAM. And it's super fast, a lot faster than a hard drive. But RAM has limited space, not nearly as big as a hard drive. So if you have a lot of things running on your computer, a lot of programs that have loaded into RAM, or if you suspend your computer, shut it down but want to bring it back up fast, that information in RAM is written to the hard drive. That's called a swap file. So when you, when the system needs to access some of that information that used to be in RAM it pulls it back from the swap file. Or when you resume your computer from being hibernated it pulls or takes that swap file and pushes it back into RAM so everything can be (inaudible) over again.

Scott admitted he had "[v]ery little" information about the fragments. He could show they were "accessed by the computer" but did not know whether they had been played. The trial court made additional inquiries:

> BY THE JUDGE: * * * Can you just explain for me a little bit of the difference between a video being, between a file being accessed and a video being played?
>
> A. The video could have been in RAM when it was downloaded but not necessarily played. I'm sure there's also other scenarios on the computer as accessing the file. Whether or not a user sat down and used a program to view the file which caused it to go into RAM or it was in RAM because it was being downloaded I can't say what caused it to go into RAM. It's not just stored on the computer. At some point something on the computer, some file, some process was accessing that file and put it into RAM. It's not like it was just copied onto the hard drive.
>
> BY THE JUDGE: For it to be moved into RAM does that require an active input from a user, or is that something that a computer can do on its own? Or if you can't answer that question explain to me why.
>
> A. I guess I could give you two scenarios. If a user is using a program to download a file the user initiated that download. So in that scenario a user could, could load that file into RAM indirectly by causing the download. * * * I'm not an expert on Windows or memory but a potential scenario that I could see where a file gets loaded into RAM without user interaction

potentially is a virus scan program identifies a file and wants to scan it. That virus scan program would need to access that file. So to put it into RAM it would scan it and then it would come back out.

**{¶42}** Viewing the evidence in a light most favorable to the prosecution, a rational trier of fact could have found the essential elements of R.C. 2907.322(A)(1) proven beyond a reasonable doubt without violating the rule against inference-stacking. Although Scott had limited information about the fragments, a rational trier of fact could infer that Schneider created the fragments by downloading a file and infer that he did so with knowledge of their character because he was the active user of the partition where they were located and he had acquired other material of a similar character. Law enforcement found "commercial pornography" and "still images of nude females" on an external hard drive, and although no evidence was presented that those materials involved minors, law enforcement also found the videos of his stepdaughter which demonstrate his interest in material involving minors. The rule against inference-stacking "is 'extremely limited' and does not prohibit * * * drawing multiple, separate inferences from the same facts." *State v. Everhart*, 12th Dist. Fayette No. CA2020-03-005, 2020-Ohio-4948, ¶ 17, quoting *State v. Braden*, 12th Dist. Preble No. CA2013-12-012, 2014-Ohio-3385, ¶ 12.

**{¶43}** Because the conviction on Count 147 is supported by sufficient evidence, we overrule the second assignment of error.

## V. POSSESSING CRIMINAL TOOLS

**{¶44}** In the third assignment of error, Schneider contends that the trial court erred when it convicted him of ten counts of possessing criminal tools in violation of R.C. 2923.24(A), i.e., three computers, an external hard drive, two cameras, and four

memory cards.  Schneider asserts that he used the items in concert, and "[n]othing in R.C. 2923.24 indicates an express intent to create criminal liability for each individual item, used together, to commit felonies."  He claims the title of the statute ("Possessing criminal tools") and a committee comment on it "suggest the opposite, using plural terms such as 'tools,' 'things,' and 'items' leading to criminal liability."  He argues that to the extent R.C. 2923.24 is ambiguous, the rule of lenity requires liberal construction of the statute in his favor.  He asks this court to reverse the ten possessing criminal tools convictions and remand to the trial court to resentence him on one count of possessing criminal tools.

{¶45} "The interpretation of a statute is a matter of law that an appellate court reviews de novo."  *State v. Simpson*, 2018-Ohio-1348, 109 N.E.3d 595, ¶ 9 (4th Dist.), citing *State v. Straley*, 139 Ohio St.3d 339, 2014-Ohio-2139, 11 N.E.3d 1175, ¶ 9.  "The primary goal of statutory construction is to give effect to the legislature's intent."  *State v. Gordon*, 153 Ohio St.3d 601, 2018-Ohio-1975, 109 N.E.3d 1201, ¶ 8.  If the language of the statute is "clear and unambiguous, courts must apply the language as written."  *Simpson* at ¶ 9, citing *Straley* at ¶ 9.  If a criminal statute is ambiguous, " ' "doubts are resolved in favor of the defendant." ' "  *Straley* at ¶ 10, quoting *State v. Young*, 62 Ohio St.2d 370, 374, 406 N.E.2d 499 (1980), quoting *United States v. Bass*, 404 U.S. 336, 348, 92 S.Ct. 515, 30 L.Ed.2d 488 (1971).

{¶46} Schneider does not direct our attention to any place in the record where he raised the issue asserted in this assignment of error in the trial court.  "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."  Crim.R. 52(B).  The defendant has the burden to "establish that

an error occurred, it was obvious, and it affected his or her substantial rights." *Fannon*, 2018-Ohio-5242, 117 N.E.3d 10, at ¶ 21. "Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus.

{¶47} Schneider does not suggest that we review his assignment of error using a plain error analysis, and it is not our duty to construct a plain error argument on his behalf. *See State v. Steers*, 4th Dist. Washington No. 11CA33, 2013-Ohio-3266, ¶ 20 (declining to sua sponte review an assignment of error using a plain error analysis). In any event, no error occurred in this instance. R.C. 2923.24(A) states: "No person shall possess or have under the person's control any substance, device, instrument, or article, with purpose to use it criminally." The statute makes it a crime to possess or control a single item with the requisite purpose, and each item Schneider possessed or had under his control with purpose to use it criminally supports a separate conviction for possessing criminal tools. The statute does not preclude multiple convictions for items used in concert, and Schneider does not assert that the possessing criminal tools counts should have merged under R.C. 2941.25, so we do not address that issue.

{¶48} For the foregoing reasons, we overrule the third assignment of error.

VI. CONCLUSION

{¶49} Having overruled the assignments of error, we affirm the trial court's judgment.

JUDGMENT AFFIRMED.

## JUDGMENT ENTRY

It is ordered that the JUDGMENT IS AFFIRMED and that Appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Athens County Court of Common Pleas to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty-day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Smith, P.J. & Abele, J.: Concur in Judgment and Opinion.


For the Court


BY: _____
     Michael D. Hess, Judge



### NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**